**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail: tschneider@schneiderwallace.com
          jkim@schneiderwallace.com

*Attorneys for Plaintiffs and the Putative Class*

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BANKS and CAROL CANTWELL, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>R.C. BIGELOW, INC., a corporation; and DOES 1 through 10, inclusive,<br><br>      Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of Cal. Bus. & Prof. Code Section 17533.7<br>2. Violation of California Consumer Legal Remedies Act<br>3. Violation of California False Advertising Law<br>4. Violation of California Unfair Competition Law<br>5. Breach of California Express Warranty<br>6. Breach of California Implied Warranty<br>7. Intentional Misrepresentation<br>8. Negligent Misrepresentation<br>9. Unjust Enrichment and Common Law Restitution<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Kimberly Banks and Carol Cantwell ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendant R.C. Bigelow, Inc. and Does 1 through 10 ("Bigelow" or "Defendant"), predicated on Bigelow's false and deceptive advertising of its tea products. Plaintiffs make the following allegations based on the investigation of their counsel and on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on their personal knowledge.

## **INTRODUCTION**

1.      During the statute of limitations period, Bigelow has marketed and sold several varieties of tea products to consumers throughout the State of California and the United States based on the representation that they are manufactured in the USA.

2.      Plaintiffs, and other similarly situated consumers, purchased the Bigelow tea products because they reasonably believed, based on the packaging and advertising, that these products are American-made. However, the products are comprised solely of foreign-sourced and processed tea.

3.      Had Plaintiffs and other consumers known the truth (i.e., that the Bigelow tea products are not American-made), they would have paid less for them or they would not have purchased them at all. As a result, Plaintiffs and other consumers have been deceived and have suffered economic injury.

4.      Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased Bigelow's falsely and deceptively labeled tea products during the statute of limitations period, for violations of Cal. Bus. & Prof. Code § 17533.7, California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, for breach of California express and implied warranty, intentional and negligent misrepresentation, and unjust enrichment.

1

## JURISDICTION AND VENUE

2      5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

3   1332(a) because Plaintiffs are citizens of the State of California, Bigelow is a citizen

4   of the State of Connecticut, and the amount in controversy exceeds the sum or value

5   of $75,000, exclusive of interest and costs. This Court also has subject matter

6   jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §

7   1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of

8   Civil Procedure, there are thousands of proposed Class members, the aggregate

9   amount in controversy exceeds $5,000,000 exclusive of interest and costs, and

10   Bigelow is a citizen of a state different from that of Plaintiffs and members of the

11   proposed Classes.

12      6.      This Court has personal jurisdiction over Bigelow because Bigelow has

13   sufficient minimum contacts with the State of California, and/or otherwise

14   intentionally avails itself of the markets in the State of California through the

15   promotion, marketing, and sale of its tea products in the State of California, to

16   render the exercise of jurisdiction by this Court permissible under traditional notions

17   of fair play and substantial justice.

18      7.      Venue is proper in this District under 28 U.S.C. § 1391(a)-(d) because a

19   substantial part of the events or omissions giving rise to the claims occurred in this

20   District.

21

## THE PARTIES

22      8.      Plaintiff Banks is a citizen of the United States and the State of

23   California and she currently resides in the City and County of Los Angeles. In or

24   around April 2020, Plaintiff Banks purchased a box of Bigelow Earl Grey Black Tea

25   at a Walmart in Long Beach, California. In purchasing the Bigelow Earl Grey Black

26   Tea product, Plaintiff Banks saw and relied on the statements "MANUFACTURED

27   IN THE USA 100% AMERICAN FAMILY OWNED" and "AMERICA'S

28   CLASSIC" printed on the product's packaging. Plaintiff Banks' reasonable belief

-2-

that the Bigelow Earl Grey Black Tea product she purchased was manufactured in the USA was an important factor in her decision to purchase it. Plaintiff Banks would have paid less for the Bigelow Earl Grey Black Tea product, or would not have purchased it at all, had she known that it was not manufactured in the USA (i.e., that it was made solely from foreign sourced and processed tea). Therefore, Plaintiff Banks suffered injury in fact and lost money as a result of Bigelow's misleading, false, unfair, and deceptive practices, as described herein.

9. Plaintiff Cantwell is a citizen of the United States and the State of California and she currently resides in the City and County of San Diego. Between in or around December 2019 to February 2020, Plaintiff Cantwell purchased boxes of Bigelow Earl Grey Black Tea, Bigelow Vanilla Chai Black Tea, Bigelow "Constant Comment" Black Tea, and Bigelow Matcha Green Tea at either a Vons, Target, or Walmart – all located in San Diego, California. In purchasing these Bigelow tea products, Plaintiff Cantwell saw and relied on the statements "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED" and "AMERICA'S CLASSIC" which were uniformly printed on the products' packaging. Plaintiff Cantwell's reasonable belief that the Bigelow Earl Grey Black Tea, Bigelow Vanilla Chai Black Tea, Bigelow "Constant Comment" Black Tea, and Bigelow Matcha Green Tea products she purchased were manufactured in the USA was an important factor in her decision to purchase them. Plaintiff Cantwell would have paid less for the Bigelow Earl Grey Black Tea, Bigelow Vanilla Chai Black Tea, Bigelow "Constant Comment" Black Tea, and Bigelow Matcha Green Tea products, or would not have purchased them at all, had she known that they were not manufactured in the USA (i.e., that they were made solely from foreign sourced and processed tea). Therefore, Plaintiff Cantwell suffered injury in fact and lost money as a result of Bigelow's misleading, false, unfair, and deceptive practices, as described herein.

///

10.     Despite being misled by Bigelow, there is still doubt in Plaintiffs' minds as to the possibility that some of the Bigelow tea products could indeed be manufactured in the USA, and consequently, Plaintiffs may again purchase a falsely-advertised manufactured in the USA tea product from Bigelow. For example, Plaintiffs regularly shop at stores where the Bigelow tea products are sold. Bigelow sells herbal tea products that bear the "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED" and "AMERICA'S CLASSIC" representations, but Plaintiffs do not presently have personal knowledge as to whether the herbal tea products are manufactured in the USA. Therefore, Plaintiffs may purchase Bigelow tea products in the future.

11.     Moreover, Plaintiffs would like to continue to purchase Bigelow tea products, and specifically, the products they purchased in the past. For example, Plaintiff Cantwell would like to buy the Bigelow Earl Grey Black Tea, Bigelow Vanilla Chai Black Tea, Bigelow "Constant Comment" Black Tea, and Bigelow Matcha Green Tea products again in the future, and Plaintiff Banks would similarly like to buy the Bigelow Earl Grey Black Tea product at some point down the road. However, Plaintiffs lack personal knowledge as to Bigelow's business practices relating to the place of manufacture of its tea products, and they do not have the resources to verify whether Bigelow has changed or will change its business practices to truthfully advertise the origins of its tea products. Therefore, Plaintiffs currently cannot trust that Bigelow will label and/or advertise its tea products truthfully, and they are susceptible to reoccurring harm.

12.     Class members will also continue to purchase Bigelow tea products, reasonably but incorrectly believing that they are manufactured in the USA, based on the unlawful conduct alleged herein.

///

///

///

-4-

13.     Bigelow is a private corporation that is headquartered in Fairfield, Connecticut. Bigelow owns approximately 24% of the market share for bagged / loose-leaf tea in the United States and it produces approximately 1.7 billion tea bags annually.[1]

14.     The true names and capacities of DOES 1 through 50, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sues such DOE defendants under fictitious names.  Upon information and belief, each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and Plaintiffs and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE defendants.  Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of such DOE defendants when ascertained.

## FACTUAL ALLEGATIONS

### A.     The Products at Issue

15.     The products at issue in this case consist of all Bigelow tea products which have packaging that represent they are manufactured in the USA, as described in further detail in paragraph 30 below. These products include but are not limited to the following Bigelow teas: Bigelow Earl Grey Black Tea, Bigelow English Teatime Black Tea, Bigelow Green Tea with Ginger, Bigelow Matcha Green with Turmeric, Bigelow Green Tea with Pomegranate, Bigelow Green Tea Decaffeinated, Bigelow "Constant Comment" Black Tea, and Bigelow Vanilla Chai Black Tea. Hereinafter, these products are referred to as the "Products."

16.     The Products are sold throughout the United States and the State of California by third party retailers such as grocery chains and large retail outlets.

///

---

[1]  https://www.bigelowtea.com/BigelowStoreProd/media/Our-History-Images/Bigelow-Company-Fact-Sheet-2_4_15.pdf (last visited July 13, 2020).

**B.**      **The Products Are Not Manufactured in the USA**

17.     Through its packaging of the Products, Bigelow has intentionally propagated the misconception that the Products are manufactured in the USA. However, none of the Products contain any tea that was grown or processed in the United States.

18.     The Products are made with black, green, and oolong tea leaves. Each of these types of tea are derived from the Camellia Sinensis plant. None of the Camellia Sinensis plant that is used to make the Products is grown or processed in the United States. Rather, all of the Camellia Sinensis plant that is used to make the Products is grown by tea plantations, and processed by tea processing plants, located in places such as Sri Lanka and India.

19.     The tea that is used to make the Products comprises well over 90% of the Product. There are additional flavors or spices added to some of the Products, but they comprise a minimal percentage of the ingredients in the Products. Further, many of these additional flavors or spices do not come from the United States either.

20.     Most of the world's tea comes from China, India, Sri Lanka, and Kenya. According to the Tea Association of the U.S.A., Inc.: "Much of the world's tea is grown in mountainous areas 3,000 – 7,000 feet above sea level, situated between the Tropics of Cancer and Capricorn in mineral-rich and acidic soil. Over 30 countries grow tea with leading tea-producing countries being Argentina, China, India, Indonesia, Japan, Kenya, Malawi, Sri Lanka, Tanzania, Taiwan and Vietnam."[2] Further, "[i]n 2019, total U.S. black and green tea imports were 260 million pounds."[3]

21.     The United States grows a miniscule amount of tea. The Charleston Tea Plantation, which is the only tea plantation in the United States, is located in

---

[2] http://www.teausa.com/14655/tea-fact-sheet (last visited July 13, 2020).

[3] *Id.* (last visited July 13, 2020).

Charleston, South Carolina. It consists of only 127 acres. On the website for the Charleston Tea Plantation, it states:

> "We're the only tea plantation in North America* where you can see hundreds of thousands of tea bushes stretching out acre after acre for almost as far as the eye can see.
>
> *There are many hundreds of tea plantations in the world. With the exception of the Charleston Tea Plantation, they're all located in Asia, Africa and South America, many thousands of miles from our shores."[4]

22.    At all relevant times herein, Bigelow has owned the Charleston Tea Plantation, but none of the Products are made with tea grown on the Charleston Tea Plantation. The website for the Charleston Tea Plantation states:

> "ARE ANY OF THE BIGELOW TEAS MADE WITH TEA FROM THE CHARLESTON TEA PLANTATION?
>
> No, Bigelow Teas are not made from any of the tea leaves grown or harvested here at the Charleston Tea Plantation. Charleston Tea Plantation Teas are the only teas made from the tea leaves produced by the Camellia Sinensis plants grown in the fields of the Charleston Tea Plantation."[5]

23.    On the website for the Charleston Tea Plantation, it also states: "This is the home of Charleston Tea Plantation teas - nine very special flavors of tea, including our original American Classic Tea. This is the only brand of tea in the world that is made exclusively with 100% tea grown in America."[6]

24.    On Bigelow's website it states: "From the very beginning in 1945, we sourced handpicked teas from high-elevation gardens where the best teas are grown and herbs from the world's finest gardens to create our flavorful blends."[7]

---

[4] https://www.charlestonteaplantation.com/ (last visited July 13, 2020).

[5] https://www.charlestonteaplantation.com/faqs (last visited July 13, 2020).

[6] https://charlestonteagarden.com/our-garden (last visited July 13, 2020).

[7] https://www.bigelowtea.com/Our-Difference/Selecting-Ingredients (last visited July 13, 2020).

25.     On Bigelow's website there is a video entitled "Fun Facts About Tea" in which a company representative states:

> "But really when you're talking about the Camellia Sinensis, or the tea bush, it's green, black, or oolong. And how do you get three different types of teas from one bush? It's really the exposure to air. That's what we call the processing of tea. It's very simple. It's just exposure to air. All of the teas that we use for our black teas are either from Sri Lanka or India. And they're from the highest mountain of gardens. And it's such a beautiful, beautiful, clean, clean product. And they take these two leaves and a bud, and in the case of green, what they do is they will steam it or pan fire it and then they dry it and chop it. And that's how you get a beautiful, green tea…So it's an unfermented product…In the case of black tea, they take those same two leaves and a bud and they chop it so that all the juices in the vein comes out and is exposed to air and it's fermenting…In the case of oolong, it's semi-fermented. They take those same two leaves and a bud, they chop it up, they expose it to air for about half the time that they do black tea…"[8]

26.     In other words, all of the green, black, and oolong teas used to make the Products are made from the same Camellia Sinensis plant, which is wholly sourced from, and processed in, countries such as Sri Lanka or India.

27.     On Bigelow's website there is a video entitled "Tea Fields of Sri Lanka" in which a company representative states: "We've been selling Sri Lankan teas for 67 years." The representative also states that the workers at the Sri Lankan tea plantation pick "about 16 kilos [of tea] a day to create the most beautiful light, bright product that is the centerpiece of our black tea. We plan on maintaining a long-time relationship with Sri Lanka."[9]

28.     The tea Bigelow sources from Sri Lanka is also processed there. On Bigelow's website there is a video entitled "Tea Factories of Sri Lanka" in which a company representative states: "After being carefully measured at weight stations

---

[8]https://www.bigelowtea.com/Our-Family-Story/Tea-Time-with-Cindi (last visited July 13, 2020).

[9] https://www.bigelowtea.com/Our-Difference/Selecting-Ingredients/Tea-of-Sri-Lanka (last visited July 13, 2020).

the tea is brought to processing plants like Waltrim."[10] Waltrim is located in Lindula, a town in Sri Lanka.

29.    After describing the detailed tea processing performed at facilities like the Waltrim facility, the company representative states in the video "Tea Factories of Sri Lanka": "And this is the final result of the beautiful clean tea. No stalks, no fiber, and ready to come to Bigelow Tea."[11]

30.    In sum, none of the tea that is used to make the Products is grown or processed in the United States.

## C.   The Products' Packaging is Likely to Deceive Reasonable Consumers

31.    The packaging of the Products is false and deceptive and likely to mislead reasonable consumers, including Plaintiffs and Class members, that the Products are manufactured in the USA.

32.    The following representations, taken in isolation and as a whole, create the impression that the Products are manufactured in the USA:

   a. The packaging of each of the Products states: "AMERICA'S CLASSIC";

   b. The packaging of each of the Products states: "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED".

33.    Hereinafter, these representations are collectively referred to as the "Manufactured in the USA representations".

34.    Representative images of some of the Products are set forth below:

///

///

///

///

---

[10] *Id.* (last visited July 13, 2020).

[11] *Id.* (last visited July 13, 2020).

**Bigelow Earl Grey Black Tea**





**Bigelow English Teatime Black Tea**





CLASS ACTION COMPLAINT

**Bigelow Green Tea with Ginger Tea**





1

**Bigelow Matcha Green with Turmeric Tea**

2

3

4

5

6

7

8

9

10

11

12



13

14

15

16

17

18

19

20

21

22

23

24

25



26

27

28

-13-

1

**Bigelow Vanilla Chai Black Tea**





### D.    The Manufactured in the USA Representations Harm Consumers

35.    A reasonable consumer is likely to believe that the Products are made entirely from American ingredients and materials and processed in the United States based on the Manufactured in the USA representations.

-14-

36. Plaintiffs and other consumers purchased the Products relying on Bigelow's Manufactured in the USA representations.

37. Plaintiffs and Class members did not know, and had no reason to know, that the Products were not manufactured in the USA, because of how the Products are falsely and deceptively packaged. As set forth above, the packaging of each of the Products states: "AMERICA'S CLASSIC" and "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED".

38. Because the Products are not manufactured in the USA, Bigelow's branding, packaging, and advertising of the Products was and continues to be false, misleading and deceptive. As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Bigelow knew that the foregoing Manufactured in the USA representations are untruthful and deceptive.

39. Bigelow also knew or should have known that Plaintiffs and other consumers would rely on its Manufactured in the USA representations in purchasing the Products, and would therefore reasonably believe that the Products are made in the USA. Nonetheless, Bigelow deceptively advertises the Products in order to exploit strong consumer sentiment for American products.

40. The importance of American-made products to consumers, or materiality, is recognized as a matter of law. *See*, *e.g.*, Cal. Bus. & Prof. Code § 17533.7; *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (2006). Empirical data also shows, and can be used to show, that American consumers prefer, and are willing to pay more for, American-made products.

41. Bigelow also acknowledges that consumers value American-made tea. The website for the Charleston Tea Plantation – which again is owed by Bigelow – states: "American Classic Tea has maintained its faithful fans since its start in the

late 1980's and has continued to prosper as a result of consumers wanting to experience the only tea grown and produced in America."[12]

42.    Plaintiffs and other consumers would have paid less for the Products, or would not have purchased them at all, had they known that the Products were and are not manufactured in the USA. Therefore, Plaintiffs and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Bigelow's false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

43.    Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws and rules, individually and on behalf of all members of the following Class and California Consumer Subclass:

**Class**

All persons who purchased any of the Products in the State of California within the applicable statute of limitations period.

**California Consumer Subclass**

All persons who purchased any of the Products in the State of California, for personal, family, or household purposes, within the applicable statute of limitations period.

44.    Excluded from the Classes are the following individuals and/or entities: Bigelow and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Bigelow has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

---

[12] https://www.charlestonteaplantation.com/faqs (last visited June 23, 2020).

45.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether certification is appropriate.

46.    Plaintiffs are members of both of the proposed Classes.

47.    <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. The Products are sold throughout the State of California through numerous third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. In addition, these Class members are identifiable and ascertainable.

48.    <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

        a.    Whether Bigelow misrepresented material facts and/or failed to disclose material facts in connection with the packaging and advertising of the Products;

        b.    Whether Bigelow's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

        c.    Whether Bigelow engaged in unfair, unlawful and/or fraudulent business practices;

        d.    Whether Bigelow's unlawful conduct, as alleged herein, was intentional and knowing;

        e.    Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

        f.    Whether Bigelow is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

49.    Bigelow has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Bigelow's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same or substantially similar deceptive practice, as the packaging of each of the Products bears the same "AMERICA'S CLASSIC" and "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED" representations. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

50.    <u>Superiority</u>: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

51.    <u>Typicality</u>: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Bigelow's uniform unlawful conduct as alleged herein.

52.    <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained

-18-

counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their counsel.

53.    Bigelow has also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**
**Violation of Cal. Bus. & Prof. Code § 17533.7**
**(*For the Classes*)**

54.    Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

55.    Cal. Bus. & Prof. Code § 17533.7(a) provides:

> "It is unlawful for any person, firm, corporation or association to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

56.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

57.    Bigelow has violated, and continues to violate, Cal. Bus. & Prof. Code § 17533.7 by selling and offering to sell the Products in the State of California with "AMERICA'S CLASSIC" and "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED" representations, as alleged herein. These representations are "similar" to "Made in U.S.A., "Made in America," and "USA" within the meaning of this statute. As the statute itself recognizes, "made" is synonymous with "manufactured."

58.    There is no statement on the Products' packaging that they are made solely from foreign-sourced and processed tea.

59.     Cal. Bus. & Prof. Code § 17533.7 permits companies to make an unqualified made in the USA representation on a product that is not 100 percent American-made only in two limited circumstances, known as safe harbor provisions. Neither apply here.

60.     *First*, Cal. Bus. & Prof. Code § 17533.7(b) provides that section 17533.7 shall not apply to:

> "[M]erchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute *not more than 5 percent* of the final wholesale value of the manufactured product."

Cal. Bus. & Prof. Code § 17533.7(b) (emphasis added).

61.     *Second*, Cal. Bus. & Prof. Code § 17533.7(c)(1) provides that section 17533.7 shall not apply if:

> "[T]he manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source"; *and*
>
> "All of the articles, units, or parts of the merchandise obtained from outside the United States constitute not *more than 10 percent* of the final wholesale value of the manufactured product."

Cal. Bus. & Prof. Code § 17533.7(c)(1)(A) and (B) (emphasis added).

62.     As alleged herein, the Products are labeled as manufactured in the USA when *none* of the tea that is used to make them is either grown or processed in the United States. As the tea used in the Products comprises well over 90% of the material used to make them, neither of the safe harbor provisions to Cal. Bus. & Prof. Code § 17533.7 apply.

63.     The alleged violations of Cal. Bus. & Prof. Code § 17533.7 were done with awareness that the conduct was wrongful, and Bigelow committed these acts

-20-

CLASS ACTION COMPLAINT

with full knowledge that the harm alleged herein would accrue to Plaintiffs and the Classes.

64.     As a direct and proximate result of Bigelow's violations of Cal. Bus. & Prof. Code § 17533.7, Plaintiffs and Class members are entitled to restitution of excess monies paid to Bigelow by Plaintiffs and Class members relating to the false and deceptive Manufactured in the USA representations on the Products.

### SECOND CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750, *et seq*.**
**(*For the California Consumer Subclass*)**

65.     Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

66.     Plaintiffs bring this claim individually and on behalf of the members of the proposed California Consumer Subclass against Bigelow.

67.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiffs and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

68.     Cal. Civ. Code § 1770(a)(2) prohibits "misrepresenting the source, sponsorship, approval, or certification of goods or services." By marketing the Products with their current packaging, Bigelow has represented and continues to represent that the source of the tea used to make the Products is the United States, when it is not. Therefore, Bigelow has violated section 1770(a)(2) of the CLRA.

69.     Cal. Civ. Code § 1770(a)(4) prohibits "using deceptive representations or designations of geographical origin in connection with goods or services." By marketing the Products with their current packaging, Bigelow has used deceptive representations and designations of the Products' geographical origin (the United States). Therefore, Bigelow has violated section 1770(a)(4) of the CLRA.

70.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . . ." By marketing the Products with their current packaging, Bigelow has represented and continues to represent that the Products have characteristics (manufactured in the USA) that they do not have. Therefore, Bigelow has violated section 1770(a)(5) of the CLRA.

71.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Bigelow has represented and continues to represent that the Products are of a particular style (manufactured in the USA) when they are of another. Therefore, Bigelow has violated section 1770(a)(7) of the CLRA.

72.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products with their current packaging, such that a reasonable consumer would believe that the Products are manufactured in the USA, but not intending to sell a product manufactured in the USA, Bigelow has violated section 1770(a)(9) of the CLRA.

73.    Bigelow has also violated the CLRA by intentionally failing to disclose that the Products are not manufactured in the USA, in order to induce consumers' purchases of the Products.

74.    Plaintiffs and members of the California Consumer Subclass have justifiably relied on Bigelow's misleading representations when purchasing the Products, reasonably believing that the Products were manufactured in the USA based on these representations. Moreover, based on the materiality of Bigelow's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiffs and members of California Consumer Subclass.

75.    Plaintiffs and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Bigelow because they would have

-22-

paid less for the Products, or would not have purchased them at all, had they known that the Products are not manufactured in the USA.

76.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff Banks is filing a declaration of venue, attached as Exhibit A to this Complaint.

77.     Under Cal. Civ. Code § 1780(a), Plaintiffs and Class members seek injunctive relief only for Bigelow's violations of the CLRA. On July 13, 2020, Plaintiffs sent a notice letter by certified mail to Bigelow of their intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782.

78.     If Bigelow fails to take corrective action within 30 days of receipt of the notice letter, Plaintiffs intend to amend the complaint to include a request for damages as permitted under Cal. Civ. Code § 1782(d).

**THIRD CLAIM FOR RELIEF**
**Violation of California's False Advertising Law ("FAL"),**
**California Business & Professions Code § 17500, *et seq.***
**(*For the Classes*)**

79.     Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

80.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

81.     California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof Code § 17500.

82.     Bigelow has represented and continue to represent to the public, including Plaintiffs and members of the Classes, through its deceptive packaging,

that the Products are manufactured in the USA. Bigelow's representations are misleading because the Products are not manufactured in in the USA. Because Bigelow has disseminated misleading information regarding the Products, and Bigelow knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Bigelow has violated the FAL.

83. Bigelow's conduct is also misleading because Bigelow fails to disclose that the Products are not manufactured in the USA in order to induce consumers' purchases of the Products.

84. As a result of Bigelow's false advertising, Bigelow has and continues to fraudulently obtain money from Plaintiffs and members of both Classes.

85. Plaintiffs request that this Court cause Bigelow to restore this fraudulently obtained money to them and members of both Classes, to disgorge the profits Bigelow made on these transactions, and to enjoin Bigelow from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of both Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*For the Classes*)**

86. Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

87. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

88. Cal. Bus. & Prof Code § 17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

89.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

90.     Bigelow's false and misleading advertising of the Products therefore was and continues to be "unlawful" because it violates California's Made in the USA Law (Cal. Bus. & Prof. Code § 17533.7), the CLRA (Cal. Civ. Code § 1750, *et seq.*), the FAL (Cal. Bus. & Prof. Code § 17500, *et seq.*), and other applicable laws as alleged herein.

91.     As a result of Bigelow's unlawful business acts and practices, Bigelow has unlawfully obtained money from Plaintiffs, and members of the proposed Classes.

92.     Under the UCL, a business act or practice is "unfair" if the Bigelow's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

93.     Bigelow's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Creating consumer confusion as to the actual location of where the Products are manufactured is of no benefit to consumers. Therefore, Bigelow's conduct was and continues to be "unfair."

94.     As a result of Bigelow's unfair business acts and practices, Bigelow has and continues to unfairly obtain money from Plaintiffs, and members of both Classes.

95.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

96.     Bigelow's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are manufactured in the USA, when they are not. Bigelow's conduct is also fraudulent

because Bigelow fails to disclose that the Products are not manufactured in the USA in order to induce consumers' purchases of the Products. Because Bigelow misled Plaintiffs and members of both Classes, Bigelow's conduct was "fraudulent."

97.   As a result of Bigelow's fraudulent business acts and practices, Bigelow has and continues to fraudulently obtain money from Plaintiffs and Class members.

98.   Plaintiffs request that this Court cause Bigelow to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of both Classes, to disgorge the profits Bigelow made on these transactions, and to enjoin Bigelow from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs, and members of both Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FIFTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**California Commercial Code § 2313**
(***For the Classes***)

99.   Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

100.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

101.   California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

102.   Bigelow has expressly warranted on the packaging of the Products that they are manufactured in the USA by stating on the Products' packaging:

"AMERICA'S CLASSIC" and "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED".

103.    These representations: (1) are an affirmation of fact or promise made by Bigelow to consumers that the Products are manufactured in the USA; (2) became part of the basis of the bargain to purchase the Products when Plaintiffs and Class members relied on the representation; and (3) created an express warranty that the Products would conform to that affirmation of fact or promises. In the alternative, the representation about the Products is a description of goods which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

104.    Plaintiffs and members of both Classes reasonably and justifiably relied on the foregoing express warranty, believing that the Products did in fact conform to that warranty.

105.    Bigelow has breached the express warranty made to Plaintiffs and members of both Classes by failing to manufacture the Products in the USA.

106.    Plaintiffs and members of both Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiffs and members of both Classes had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

107.    As a result, Plaintiffs and members of both Classes suffered injury and deserve to recover all damages afforded under the law.

108.    Within a reasonable amount of time after Plaintiffs discovered that Bigelow did in fact breach the express warranty, Plaintiffs notified Bigelow of the breach.

///
///
///

## SIXTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### California Commercial Code § 2314
### (*For the Classes*)

109.    Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

110.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

111.    California Commercial Code § 2314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).

112.    California Commercial Code § 2314(2) provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any."  Cal. Com. Code § 2314(2)(f).

113.    Bigelow is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to Plaintiffs and Class members.

114.    By advertising the Products with their current packaging, Bigelow made an implied promise that the Products were manufactured in the USA. By not making the Products in the USA, the Products have not "conformed to the promises…made on the container or label." Plaintiffs and California consumers did not receive the goods as impliedly warranted by Bigelow to be merchantable.

115.    Therefore, the Products are not merchantable under California law and Bigelow has breached its implied warranty of merchantability with regard to the Products.

116.    If Plaintiffs and members of both the Classes had known that the Products were not manufactured in the USA, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect

result of Bigelow's breach, Plaintiffs and members of both Classes have suffered injury and deserve to recover all damages afforded under the law.

**SEVENTH CLAIM FOR RELIEF**
**Intentional Misrepresentation**
***(For the Classes)***

117.  Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

118.  Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

119.  Bigelow marketed the Products in a manner indicating that they are manufactured in the USA. However, the Products are not manufactured in the USA. Therefore, Bigelow has made misrepresentations as to the Products.

120.  Bigelow's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the characteristics and source of the Products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

121.  At all relevant times when such misrepresentations were made, Bigelow knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

122.  Bigelow intends that Plaintiffs and other consumers rely on these representations, as evidenced by Bigelow intentionally using packaging that either directly states or clearly implies that the Products are manufactured in the USA.

123.  Plaintiffs and members of the Classes have reasonably and justifiably relied on Bigelow's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

124.  Therefore, as a direct and proximate result of Bigelow's intentional misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the

-29-

amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### (*For the Classes*)

125. Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

126. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

127. Bigelow marketed the Products in a manner indicating that they are manufactured in the USA. However, the Products are not manufactured in the USA. Therefore, Bigelow has made misrepresentations as to the Products.

128. Bigelow's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the characteristics and source of the Products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

129. At all relevant times when such misrepresentations were made, Bigelow knew or had been negligent in not knowing that that the Products were not manufactured in the USA. Bigelow had no reasonable grounds for believing its misrepresentations were not false and misleading.

130. Bigelow intends that Plaintiffs and other consumers rely on these representations, as evidenced by Bigelow intentionally using packaging that either directly states or clearly implies that the Products are manufactured in the USA.

131. Plaintiffs and members of the Classes have reasonably and justifiably relied on Bigelow's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

132. Therefore, as a direct and proximate result of Bigelow's negligent misrepresentations, Plaintiffs and members of the Classes have suffered economic

losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
### (*For the Classes*)

133.   Plaintiffs repeat the allegations contained in paragraphs 1-53 above as if fully set forth herein.

134.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Bigelow.

135.   As alleged herein, Bigelow has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Products. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Bigelow. Plaintiffs and members of the Classes therefore have been induced by Bigelow's misleading and deceptive representations about the Products, and paid more money to Bigelow for the Products than they otherwise would and/or should have paid.

136.   Plaintiffs and members of the Classes have conferred a benefit upon Bigelow as Bigelow has retained monies paid to them by Plaintiffs and members of the Classes.

137.   The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Bigelow.

138.   Therefore, it is inequitable and unjust for Bigelow to retain the profit, benefit, or compensation conferred upon them without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

139.   As a direct and proximate result of Bigelow's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Bigelow from its deceptive, misleading, and unlawful conduct as alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully pray for the following relief:

A.   Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.   A declaration that Bigelow's actions, as described herein, violate the claims alleged herein;

C.   An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including, *inter alia*, an order prohibiting Bigelow from engaging in the unlawful act described above;

D.   An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Bigelow obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.   An award of all economic, monetary, actual, consequential, and compensatory damages caused by Bigelow's conduct;

F.   An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

G.   An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

H.   For such further relief that the Court may deem just and proper.

# **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Class, hereby demand a jury trial with respect to all issues triable of right by jury.

DATED: July 13, 2020          **THE WAND LAW FIRM, P.C.**

By: /s/ Aubry Wand _____
     Aubry Wand

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

Todd M. Schneider
Jason H. Kim

*Attorneys for Plaintiffs and the Putative Class*

-33-