1
2
3
4
5
6
7

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
E-mail: tschneider@schneiderwallace.com
        jkim@schneiderwallace.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

8

*Attorneys for Plaintiffs and the Putative Classes*

9

10
11
12

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

13
14
15
16
17
18
19
20

KIMBERLY BANKS and CAROL CANTWELL, on behalf of themselves and all others similarly situated,

            Plaintiffs,

      v.

R.C. BIGELOW, INC., a corporation; and DOES 1 through 10, inclusive,

            Defendants.

CASE NO.: 2:20-cv-06208-DDP (RAOx)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date:   November 17, 2020
Time:   10:00 a.m.
Place:  Courtroom 9C
        350 W 1st Street
        Los Angeles, CA 90012

Action Filed: July 13, 2020

21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

I.     INTRODUCTION ................................................................................ 1

II.    LEGAL STANDARD ......................................................................... 1

III.   RELEVANT FACTUAL ALLEGATIONS .................................... 1

IV.   ARGUMENT ....................................................................................... 2

    A.   Plaintiffs Advance a Clear and Viable Theory of Liability ............................... 2

        1.   The FAC Satisfies the Requirements of Rule 9(b) ......................... 2

        2.   The FAC Satisfies the Reasonable Consumer Standard ........................ 4

    B.   The Manufactured in USA Representations Are Actionable ........................... 7

        1.   The Phrase "America's Classic" is Actionable ........................ 7

        2.   The Phrase "100% American Family Owned" is Actionable ...................... 9

        3.   The Phrase "Manufactured in the USA" is Actionable .............................. 11

    C.   Defendant Does Not Make A Proper Qualified Made in USA Claim ............. 18

    D.   Plaintiffs' Claims for Equitable Relief Should Not be Dismissed ................... 20

    E.   Plaintiffs Have Sufficiently Pleaded an Unjust Enrichment Claim ................ 21

    F.   Plaintiffs Have Sufficiently Pleaded Claims for Intentional and Negligent Misrepresentation ........................................................................... 21

    G.   Plaintiffs Adequately Plead Breach of Warranty Claims................................ 22

        1.   Breach of Express Warranty ..................................................... 22

        2.   Breach of Implied Warranty ..................................................... 23

    H.   Plaintiffs Have Standing with Respect to Unpurchased Products ................... 24

V.    CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2nd Cir. 2012) ............................................................5

*Ang v. Bimbo Bakeries USA, Inc.,*
  2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ..................................24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................1

*Astiana v. Ben & Jerry's Homemade, Inc.,*
  2011 WL 2111796 (N.D. Cal. May 26, 2011) ....................................4

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
  2012 WL 2990766 (N.D. Cal. July 20, 2012) ..................................25

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015) ......................................................21, 22

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................1

*Benson v. Kwikset Corp.,*
  152 Cal. App. 4th 1254 (2007) ..................................................10, 15

*Bowring v. Sapporo Co.,*
  234 F. Supp. 3d 386 (E.D.N.Y. 2017) ..............................................18

*Buonasera v. Honest Co., Inc.,*
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) ..............................................23

*Casella v. Webb,*
  883 F.2d 805 (9th Cir. 1989) ..............................................................7

*Clancy v. The Bromley Tea Co.,*
  308 F.R.D. 564 (N.D. Cal. 2013) ........................................................4

*Coffelt v. Kroger Co.,*
  2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ..................................7

*David v. Baker,*
  129 Fed. App'x 358 (9th. Cir. 2005) ..................................................1

*Dickie v. Cannondale Corp.,*
  2016 IL App (1st) 133889-U ............................................................14

*Estakhrian v. Obenstine,*
  233 F. Supp. 3d 824 (C.D. Cal. 2017) ..............................................20

*Evans v. DSW, Inc.,*
  2017 WL 7058232 (C.D. Cal. Sept. 14, 2017) ................................21

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
  2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ..................................8

*Gibson v. Jaguar Land Rover North America, LLC,*
  2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ..................................20

*Hauter v. Zogarts,*
  14 Cal. 3d 104 (1975) ......................................................................23

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) .................................................. 25

*Hibbs-Rines v. Seagate Techs., LLC*,
  2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ........................................ 9

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................ 6

*In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*,
  2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ................................ 24, 25

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................ 9

*In re ConAgra Foods, Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) .............................................. 2

*In the Matter of iSPRING WATER SYSTEMS, LLC*
  (Docket No. C-4611), April 6, 2017 .................................................. 19

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ...................................................................... 11

*Kennedy v. Natural Balance Pet Foods, Inc.*,
  2007 WL 2300746 (S.D. Cal. Aug. 8, 2007) ...................................... 17

*Kosta v. Del Monte Corp.*,
  2013 WL 2147413 (N.D. Cal. May 15, 2013) .................................... 25

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ........................................................................ 6

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .............................................................. 5

*Lilly v. ConAgra Foods, Inc.*,
  743 F.3d 662 (9th Cir. 2014) .............................................................. 4

*Longest v. Green Tree Servicing LLC*,
  74 F. Supp. 3d 1289 (C.D. Cal. 2015) .............................................. 21

*Luong v. Subaru of Am., Inc.*,
  2018 WL 2047646 (N.D. Cal. May 2, 2018) ...................................... 20

*McDonnell Douglas Corp. v. Thiokol Corp.*,
  124 F.3d 1173 (9th Cir. 1997) .......................................................... 23

*Morley v. Walker*,
  175 F.3d 756 (9th Cir. 1999) .............................................................. 1

*Paz v. AG Adriano Goldschmied, Inc.*,
  2014 WL 5561024 (S.D. Cal. Oct. 27, 2014) .................................... 19

*Reed v. Gen. Mills, Inc.*,
  2019 WL 2475706 (W.D. Wash. June 13, 2019) ................................ 7

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
  768 F.3d 938 (9th Cir. 2014) .............................................................. 1

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
  2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) .............................. 13, 23

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ...................................................................... 22

-iii-

*Rosales v. FitFlop USA, LLC*,
  882 F. Supp. 2d 1168 (S.D. Cal. 2012).................................................23

*Sabo v. Wellpet, LLC*,
  250 F. Supp. 3d 332 (N.D. Ill. 2107)...................................................17

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)................................................................20

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)................................................................5

*Strumlauf v. Starbucks Corp.*,
  192 F. Supp. 3d 1025 (N.D. Cal. 2016)..................................................3

*Takano v. Procter & Gamble Co.*,
  2018 WL 5304817 (E.D. Cal. Oct. 24, 2018).........................................8

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)................................................................2

*Weinstat v. Dentsply Internat., Inc.*,
  180 Cal. App. 4th 1213 (2010).............................................................22

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934, 938 (9th Cir. 2008)....................................................4, 11

*Zakaria v. Gerber Prod. Co.*,
  2015 WL 3827654 (C.D. Cal. June 18, 2015).......................................22

**Statutes**

Cal. Bus. & Prof. Code § 17533.7.................................................passim

Cal. Com. Code § 2313(1).......................................................................22

Cal. Com. Code § 2314(2)(f)...................................................................23

**Other Authorities**

FTC, Enforcement Policy Statement on U.S. Origin Claims,
  62 Fed. Reg. 63756, 1997 WL 737641, *63770 (Dec. 2, 1997).............12

FTC, Request for Public Comment on Proposed Guides for the use of U.S. Origin
  Claims,
  62 Fed. Reg. 25020-01, 1997 WL224420, *25045 (May 7, 1997)..........12

**Rules**

Fed. R. Civ. P. 9(b).........................................................................passim

Fed. R. Civ. P. 12(b)(6)....................................................................1, 6

## I.   INTRODUCTION

Defendant uniformly represents on the packaging of the tea products at issue ("Products") that they are "AMERICA'S CLASSIC" and "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED." These representations taken together are false, deceptive, and likely to mislead a reasonable consumer because Plaintiffs allege in detail that the primary components of the Products are grown and processed outside the United States. The arguments that Defendant advances in its Motion to Dismiss ("MTD") should not convince the Court otherwise. Defendant at best raises factual disputes and merits defenses that can only be resolved at a later stage of the proceedings. The Court should deny the MTD in its entirety.

## II.   LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), it is the defendant's burden to show that the plaintiff cannot state a claim for relief. *David v. Baker*, 129 Fed. App'x 358, 360 (9th. Cir. 2005). The court "must accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To survive a motion to dismiss, the plaintiff must only allege enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

## III.   <u>RELEVANT FACTUAL ALLEGATIONS</u>

Plaintiffs allege that Defendant uniformly represents on the packaging of the Products: (1) "AMERICA'S CLASSIC"; and (2) "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED" (hereinafter collectively referred to as the

"Manufactured in the USA Representations"). ECF No. 11, First Amended Complaint ("FAC") ¶ 32. These representations are likely to deceive a reasonable consumer that the Products are made in the USA. *Id.* However, none of the black, green, and oolong tea leaves used to make the Products are grown or processed in the United States. *Id.* ¶ 18. Plaintiffs, and other consumers, suffered an economic injury as a result of this deception because they would have paid significantly less for the Products had they known the truth—i.e., that the Products were not American-made. *Id.* ¶¶ 8-9. As a result, Plaintiffs assert valid class claims under California's consumer protection laws and several common law theories. *Id.* ¶ 4.

## IV.   ARGUMENT

### A.   Plaintiffs Advance a Clear and Viable Theory of Liability

Plaintiffs' theory of liability is straightforward: Defendant's Manufactured in the USA Representations are likely to deceive a reasonable consumer that the Products are made in the USA and consumers suffered a financial injury as a result. Although Defendant's argument to the contrary is amorphous, MTD at 4-5, it appears to argue that Plaintiffs fail to satisfy the Rule 9(b) requirements and the reasonable consumer standard. Neither argument has merit.

#### 1.   The FAC Satisfies the Requirements of Rule 9(b)

Defendant summarily contends that the pleading requirements of Rule 9(b) are not satisfied. MTD at 5, 8 n. 1. To the extent Rule 9(b) governs Plaintiffs' claims sounding in fraud, Plaintiffs have satisfied Rule 9(b) by clearly pleading the "who, what, when, where, and how" of the alleged misconduct. *See In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1099 (C.D. Cal. 2012) (analyzing requirements of Rule 9(b) in false advertising context). These allegations are specific enough to enable Defendant to defend itself against the claims, which is all that Rule 9(b) requires. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

In particular, Plaintiffs allege: (1) *the who*: Defendant misrepresented the Products, FAC ¶ 17; (2) *the what*: Plaintiffs and other consumers purchased the

Products based on the deceptive Manufactured in the USA Representations printed on the Products' packaging, FAC ¶¶ 31-36; (3) *the when*: Plaintiff Banks purchased one of the Products in April 2020 and Plaintiff Cantwell purchased some of the Products between December 2019 to February 2020, FAC ¶¶ 8-9; and (4) *the where*: Plaintiffs' purchases were made at Vons, Target, or Walmart in Long Beach and San Diego, *id.*

Defendant only disputes the "*how*" prong, asserting "Plaintiffs make no allegations suggesting that the phrase [America's Classic] misled them (and if so, how and why it did, such that Bigelow can appropriately respond as to the implausibility of such reliance"). MTD at 8. This argument fails for several reasons. First, Plaintiffs indisputably allege that the phrase "AMERICA'S CLASSIC", in the context of the other representations, deceived them. FAC ¶¶ 8-9. Second, Plaintiffs identify each of the challenged representations by submitting photographs of the Products' packaging,[1] explain why they are false and deceptive, and plausibly allege how and why they and other reasonable consumers suffered a financial injury as a result of the deception. *Id.* ¶¶ 8-9, 31-42. Defendant's primary arguments—that the Manufactured in the USA Representations considered in isolation are puffery or would not deceive a reasonable consumer—raise fact-based arguments that have nothing to do with whether Plaintiffs have adequately pleaded the "how" prong. Indeed, these arguments show that Defendant is well-apprised of the allegations and able to defend itself against them. In short, the "how" prong is satisfied. *See*, *e.g.*, *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1035 (N.D. Cal. 2016) ("how" prong satisfied when "[t]he Complaint alleges that Starbuck's conduct was false and misleading because 'Starbucks Lattes are underfilled…' and that 'Plaintiffs were induced to pay substantially more for Starbucks Lattes based on these false representations.'"); *Clancy v. The Bromley Tea Co.*, 308

---

[1] The examples of the Products' packaging which Defendant submits as Exhibits 1—4 (ECF Nos. 12-2—12-5) to its request for judicial notice corroborate the allegations in the FAC, as they have the same Manufactured in the USA Representations.

F.R.D. 564, 576 (N.D. Cal. 2013) ("The FAC alleges that Defendant's product labels and website were in violation of the Sherman Law, and that Plaintiff reasonably relied on those statements to purchase products he would not have purchased absent these allegedly deceptive statements, satisfying the requirement to demonstrate 'how' the statements were misleading."); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, *6 (N.D. Cal. May 26, 2011) (Rule 9(b) was satisfied: "[t]he 'how the statements were misleading' is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a 'synthetic.'").

### 2.    The FAC Satisfies the Reasonable Consumer Standard

Defendant next argues that no reasonable consumer could be deceived by the Manufactured in the USA Representations. MTD at 5. Courts apply the "reasonable consumer" standard to determine whether a representation is false or misleading under Plaintiffs' CLRA, UCL, and FAL claims. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under the reasonable consumer standard, Plaintiffs must only show that consumers are likely to be deceived by a representation. *Id.* Whether a representation is likely to deceive is almost always a question of fact, not appropriate for resolution on a motion to dismiss. *Williams*, 552 F.3d at 938-39; *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014) ("[w]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss].") (internal quotation and citation omitted). As such, dismissal of false advertising claims is proper only in a "***rare situation***," where "it [is] ***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939 (emphasis added).

Here, the challenged representations, and the phrase "MANUFACTURED IN THE USA 100%" in particular, are likely to mislead a reasonable consumer into believing the Products are made in the USA. Indeed, this phrase expressly violates California's Made in USA statute, Cal. Bus. & Prof. Code § 17533.7, as set forth

-4-

below. To the extent there is any ambiguity regarding how reasonable consumers understand the Manufactured in USA Representations, it presents a question of fact which cannot be resolved on the pleadings. Defendant acknowledges as much when it asserts that "[d]ismissal is required because Plaintiffs cannot plausibly allege that Bigelow's packaging deceptively violates reasonable consumer expectations. Consumers know that 'manufacturing' involves the down-line production of a product." MTD at 5. Defendant also interjects facts outside the pleadings that the Products are "blended, packaged, and distributed in the United States," *id.* at 2, which corroborate the allegations in the FAC that the tea is wholly processed abroad. Regardless, by attempting to insert extrinsic facts, Defendant acknowledges that determination of consumer deception in this case involves a fact-based inquiry. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (overturning dismissal of the plaintiffs' claims because the decision "was rooted in defendants' factual assertions" and "the court assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings.").[2]

At best, Defendant's position presents a competing theory that it can advance later in the case. On a motion to dismiss, however, the Court should accept Plaintiffs' theory as the correct one. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (when "there are two alternative explanations…plaintiff's complaint survives a motion to dismiss…[unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2nd Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule

---

[2] The Court cannot consider the truth of these facts on a motion to dismiss. *See Lee*, 250 F.3d at 688-89. The facts stated in the "Factual Background" section of the MTD, and other facts interspersed throughout the brief, are not encompassed within the FAC and Defendant does not (nor could it) ask the Court to take judicial notice of these facts.

12(b)(6) motion…[the court] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").

Next, Defendant asserts that the law does not redress Plaintiffs' personal disappointment that the tea leaves were not grown in the U.S. or that any part of the production process occurred outside of the U.S. MTD at 5. Both are strawman arguments. The first assertion is divorced from the allegations, as the FAC clearly alleges that Plaintiffs paid a price premium based on their belief that the Products they bought were made in the USA. Although Defendant does not elaborate, Plaintiffs construe the argument as questioning their standing. But these allegations plead more than mere "personal disappointment." Rather, Plaintiffs allege they have suffered a concrete financial injury stemming directly from their reliance on the Manufactured in USA Representations. FAC ¶¶ 8-9. Such allegations plainly satisfy Article III and statutory standing requirements. When "'[p]laintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011) (consumers have standing to sue under the FAL and CLRA based on deceptive made in the USA labels when they allege that they would not have purchased a product or would have paid less for a product but for the alleged deceptive advertising).

The second assertion that "Plaintiffs fail to allege that any part of the production process occurred outside of the U.S." wholly ignores allegations in the FAC. As discussed in more detail *infra* at 16-17, Plaintiffs allege that the tea leaves are not only grown outside the U.S., but that they are "processed by tea processing plants, located in places such as Sri Lanka and India." FAC ¶ 18. In short, Plaintiffs allege that the entire production process for the tea leaves that are the predominant component of the Products occurred outside the U.S.

### B.     The Manufactured in USA Representations Are Actionable

The crux of the MTD is that the Manufactured in the USA Representations are not actionable. In order to make these arguments, Defendant parses the Manufactured in USA Representations into three different statements ("AMERICA's CLASSIC", "MANUFACTURED IN THE USA 100%" and "AMERICAN FAMILY OWNED"), and examines each statement in a vacuum.[3] MTD at 6-11. However, all of the challenged representations must be considered together, and in context, when determining whether a reasonable consumer could be deceived. *See Reed v. Gen. Mills, Inc.*, 2019 WL 2475706, *4 (W.D. Wash. June 13, 2019) ("As a preliminary matter, the Court is skeptical that each allegedly deceptive feature should be analyzed in isolation. Plaintiffs' claim is that the packaging as a whole is deceptive."). The same is true with respect to Defendant's puffery argument—a statement or representation that on its own might be considered puffery can be held actionable when viewed in context with other statements. *See Coffelt v. Kroger Co.*, 2017 WL 10543343, *5 (C.D. Cal. Jan. 27, 2017) ("Yet, even statements that "might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation.") (citing *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989)). As these cases recognize, reasonable consumers will consider the packaging holistically in assessing the meaning of a representation. That is true for Plaintiffs. FAC ¶¶ 8-9.

#### 1.     The Phrase "America's Classic" is Actionable

Defendant argues the phrase "America's Classic" is puffery. MTD at 6-8. This argument is unconvincing for several reasons.

First, "AMERICA'S CLASSIC" is not puffery. It is the type of statement that can objectively be proven true or false: the Products either are, or are not, from

---

[3] Plaintiffs respond to each of the three statements individually for organizational clarity. All three statements must be examined together in their totality.

America. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) ("[w]hether [ginger ale] does or does not contain ginger root is not a vague or subjective question, it is a clear fact-based question. Either the drink contains ginger root, or it does not."). Furthermore, "puffery" in the context of made in the USA claims is different. The FTC prohibits a range of made in USA claims that could be considered puffery in other contexts. For example, the U.S. Fair Trade Commission's ("FTC") "Complying with the Made in USA Standard," states:

> Depending on the context, U.S. symbols or geographic references (for example, U.S. flags, outlines of U.S. maps, or references to U.S. locations of headquarters or factories) may convey a claim of U.S. origin either by themselves, or in conjunction with other phrases or images. Example: A company promotes its product in an ad that features a manager describing the "true American quality" of the work produced at the company's American factory. Although there is no express representation that the company's product is made in the U.S., the overall — or net — impression the ad is likely to convey to consumers is that the product is of U.S. origin.

Request for Judicial Notice ("RJN"), Ex. A, at p. 3.

The phrase "true American quality", or a picture of an American flag, is akin to "AMERICA'S CLASSIC" here. Following FTC standards, this phrase cannot be considered puffery as a matter of law.

Second, to the extent "AMERICA'S CLASSIC" could be considered puffery standing on its own, it cannot be so considered when read in conjunction with the other challenged representations. For example, in *Williams*, the Ninth Circuit recognized that while the statement "nutritious" when "standing on its own, could arguably constitute puffery," that determination could not be made on a motion to dismiss because "[t]his statement certainly contributes…to the deceptive context of the packaging as a whole. Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery." 552 F.3d at 939, n.3. *See also Takano v. Procter & Gamble Co.*, 2018 WL 5304817, *7 (E.D. Cal. Oct. 24, 2018) ("Fiercely Good For Your Hair" standing alone could be puffery but denying motion to dismiss

on puffery grounds because whether a reasonable consumer could be misled by additional statements was a question of fact). Further, the Court does not even need to reach this issue because the "MANUFACTURED IN THE USA" phrase, standing on its own, is not puffery and is likely to deceive a reasonable consumer. This case can proceed on that phrase alone, and it is not necessary to determine that "AMERICA'S CLASSIC" is puffery at this stage.[4]

Lastly, determining that a statement is puffery is generally not appropriate on a motion to dismiss because it involves resolution of a question of fact. *See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1005 (N.D. Cal. 2018) ("*Ecodiesel*") ("whether a statement is deemed puffery is generally considered a question of fact") (collecting cases). Defendant bears the burden of demonstrating that this phrase is puffery. However, the best interpretation it can muster is that "AMERICA'S CLASSIC" "refers to the product's popularity, that the tea product has been a favorite among Americans for a long time." MTD at 6. Confronted with these two competing interpretations, the Court should not determine that "AMERICA'S CLASSIC" is puffery as a matter of law. *Ecodiesel*, 295 F. Supp. 3d at 1005 ("While it is also plausible that a reasonable consumer would simply understand 'EcoDiesel' to mean good fuel economy…, the fact that there is an equally plausible interpretation in Plaintiffs' favor means that Plaintiffs survive a 12(b)(6) challenge.") (citation omitted).

## 2. The Phrase "100% American Family Owned" is Actionable

Defendant next argues that the phrase "100% AMERICAN FAMILY OWNED" is a true statement and not within the ambit of California's Made in USA Statute. MTD

---

[4] There is no basis to strike allegations regarding "AMERICA'S CLASSIC" under Rule 12(f) because, even if it were puffery, it bolsters the other deceptive representations, and is not "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Moreover, motions to strike are generally disfavored. *See Hibbs-Rines v. Seagate Techs., LLC*, 2009 WL 513496, *2 (N.D. Cal. Mar. 2, 2009).

at 8. Again, this is an improper attempt to split one representation into two separate phrases. This attempt is unreasonable on the face of the representation: a consumer will read the entire phrase "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED" together. *See* FAC ¶ 34. And to the extent this representation is examined separately in the manner suggested by Defendant, a reasonable consumer is equally likely to believe that "100%" modifies "MANUFACTURED IN THE USA" and not "AMERICAN FAMILY OWNED." In that case, the "100%" would further reinforce the belief that the Products are made in the USA. Either way, Defendant raises a factual question that cannot be resolved on the pleadings.[5]

Nor does Defendant's self-serving interpretation advance its cause. Defendant asserts that the phrase "100% AMERICAN FAMILY OWNED" "is a true statement, one which Plaintiff does not dispute. *See* Dkt. 11." MTD at 8. But Plaintiffs repeatedly allege that each of the Manufactured in the USA representations, on their own and as a whole, are false and deceptive. *See*, *e.g.*, FAC ¶¶ 32, 37-38. This is yet another fact-based argument supported by evidence outside the FAC that cannot be resolved on a motion to dismiss. Defendant may present evidence at a later stage that consumers believe "100%" modifies "AMERICAN FAMILY OWNED" and that Defendant is a 100% American family owned company. At this stage, however, these factual questions cannot be conclusively resolved in Defendant's favor.

Defendant also asserts that the phrase "100% AMERICAN FAMILY OWNED" does not fall within the bounds of California's Made in USA statute, but it cites no authority in support. MTD at 9. Cal. Bus. & Prof. Code § 17533.7(a) was drafted in an open-ended manner so as to encompass a range of statements that fall within the spirit of the law, which is to prohibit deceptive representations that a product is made or manufactured in the USA. *Benson*, 152 Cal. App. 4th at 1268 ("Section 17533.7

---

[5] Anecdotal evidence, documentary evidence, and survey evidence could all be used to empirically prove how consumers interpret this phrase, in addition to other factual questions discussed herein.

constitutes a legislative determination that representations suggesting merchandise was made in the United States are misleading unless the producer's manufacturing processes satisfy the strictures of the statute."). The fact that "100% AMERICAN FAMILY OWNED" is not expressly enumerated in Cal. Bus. & Prof. Code § 17533.7(a) does not mean it does not fall within the ambit of potentially misleading statements regulated by the statute. The reasonable consumer standard does not depend on literal truth or falsity. California laws "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002); *Williams*, 552 F.3d at 938 (adopting *Kasky*).

Here, the phrase "100% AMERICAN FAMILY OWNED," even if literally true, could likely deceive a reasonable consumer. Indeed, Defendant's own interpretation of this phrase supports Plaintiffs' position: "By comparison, '100% American Family Owned' identifies Bigelow's ownership and the company's physical location." A consumer is likely to reasonably believe that the Products are made in the USA based on the understanding that they are made by a company that is 100% American-family owned and located in the U.S. This is particularly so when read in conjunction with the phrases "AMERICA'S CLASSIC" and "MANUFACTURED IN THE USA."

### 3. The Phrase "Manufactured in the USA" is Actionable

Defendant similarly argues that the phrase "Manufactured in the USA" does not fall within the ambit of California's Made in the USA statute. Although Defendant does not clearly articulate the basis for this argument, it appears to be predicated on two grounds: (1) reasonable consumers "do not believe that the growing of a raw tea product is part of the 'manufacturing' of tea," and (2) the tea leaves are raw ingredients that are not encompassed within the meaning of California Business & Professions Code § 17533.7. MTD at 9-11. Both arguments fail.

As an initial matter, there is no meaningful distinction between a representation that a product is "manufactured in the U.S.A." and one that a product is "made in the

U.S.A." California Business and Professions Code § 17533.7 governs products containing the words "'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or *similar words*." (Emphasis added.) That statute further provides that such terms cannot be used if the product or any part thereof "has been entirely or substantially *made, manufactured, or produced* outside of the United States." (Emphasis added). Thus, this statute considers the terms "made," "manufactured," and "produced" to be synonymous. The FTC takes the same position. *See*, *e.g.*, FTC, Request for Public Comment on Proposed Guides for the use of U.S. Origin Claims, 62 Fed. Reg. 25020-01, 1997 WL224420, *25045 (May 7, 1997) ("This provision further distinguishes claims about specific processes from general or indefinite claims such as 'created,' 'produced,' or 'manufactured' in USA, which are likely to be viewed as synonymous with 'Made in USA.'"); RJN, Ex. B, at 34; FTC, Enforcement Policy Statement on U.S. Origin Claims, 62 Fed. Reg. 63756, 1997 WL 737641, *63770 (Dec. 2, 1997) ("More general terms, however, such as that a product is, for example, 'produced,' or 'manufactured' in the United States" are "likely to be understood by consumers as synonymous with 'Made in USA' and therefore as unqualified U.S. origin claims."); RJN, Ex. C, at 17.

Against that backdrop, Defendant argues that reasonable consumers would not believe that the growing of raw tea is a part of manufacturing of tea. In support, Defendant posits: "The manufacturing of tea includes flavor development, *processing*, assembly, and packaging, and Bigelow does all of that right here in the United States." MTD at 10 (emphasis added). This factual statement (again based on facts outside the FAC) is directly contradicted by the FAC where Plaintiffs allege, *inter alia*, "none of the Products contain any tea that was grown or *processed* in the United States" and "all of the Camellia Sinensis plant that is used to make the Products is grown by tea plantations, and *processed* by tea processing plants, located in places such as Sri Lanka and India." FAC ¶¶ 17-18 (emphasis added). The Court must accept these allegations, and all reasonable inferences therefrom, as true.

-12-

In any event, how reasonable consumers understand the word "manufactured" in the context of the packaging of the Products as a whole is a question of fact. *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, *8 (N.D. Cal. Mar. 16, 2020) ("Throughout its motion, [defendant] repeatedly argues that plaintiffs fail to allege definitions for the terms 'grain,' 'corn,' 'soy,' and 'soy protein,' and whether the corn and soy found in Nature's Recipe Food constitute 'grain' or 'soy protein.' The relevant question is not what those terms mean, but rather what they mean to reasonable consumers, which cannot be resolved on a motion to dismiss.") Similarly, there is no basis at this juncture to determine that reasonable consumers know that the growing of raw tea is not part of the manufacturing process.

Defendant's assertion that it does not hide the fact "that some of the raw ingredients for the products at issue come from international growers," has no bearing on the reasonable consumer standard. In support of this argument, Defendant references portions of the FAC which cite two videos and a fact sheet posted on Defendant's website. MTD at 10. This is a red herring because Plaintiffs' theory is that reliance is predicated on the Manufactured in the USA Representations on the Products' packaging. FAC ¶¶ 8-9, 17-18. Plaintiffs cited material from Defendant's website solely as foundational support for the allegations that none of the tea leaves used to make the Products are from the United States. Thus, it is improper for Defendant to refer to its website as a disclosure that obviates consumer deception.[6] It is highly improbable that any consumers have been to Defendant's website, much less that they discovered that the tea is sourced from India and Sri Lanka by watching videos from the website. In any event, the impact of information from Defendant's

---

[6] Defendant makes the related argument that one of the Products—Bigelow Earl Grey Tea—discloses that it has real oil of bergamot from Calabria, Italy, is also irrelevant. In the FAC, Plaintiffs expressly recognize that such flavoring ingredients are so negligible that they fall outside the bounds of the safe harbor provisions of California's Made in USA Statute. *See* FAC ¶ 19.

website on consumer understanding of the Products' origin presents a factual question which can be addressed, to the extent it is relevant, later in the litigation. Finally, this argument is equivalent to a qualified made in USA claim defense, which for the reasons discussed *infra* at 18-20, does not support dismissal of Plaintiff's claims.

Defendant cites one case from an Illinois appellate court, *Dickie v. Cannondale Corp.*, 2016 IL App (1st) 133889-U, in support of its argument. This opinion is not binding on this Court, cannot even be cited as precedent in Illinois court, and is distinguishable. *Dickie* is a personal injury case where the plaintiff brought an ancillary claim for breach of express warranty under Illinois law. *Id.* ¶ 2. The trial court "determined that nothing in Dickie's testimony evinced that he relied on any statement that the pedals were made by Cannondale or were made in the USA." *Id.* ¶ 38. Any findings with respect to the "Handmade in the USA" representation are, at most, limited to an express warranty claim, and has no bearing on how reasonable consumers understand the term "manufacturing." Finally, to the extent *Dickie* is relevant, it was wrongfully decided. The *Dickie* court provides *no* analysis in support of its conclusion that "'Handmade in the USA'" was not a promise that all components were made in the U.S.A *Id.* ¶ 22. It is also at odds with FTC authority as set forth above.

Next, Defendant summarily argues that raw materials are not within the ambit of the Made in USA Statute. MTD at 11. In addition to the fact that Defendant fails to articulate any reasoning for this proposition, this argument fails because there is no persuasive authority that raw materials fall outside the Made in USA Statute and, in any event, the foreign grown and processed tea leaves are not raw materials.

Cal. Bus. & Prof. Code § 17533.7 provides in pertinent part:

> It is unlawful for any person, firm, corporation or association to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words if the *merchandise or any article, unit, or part thereof*, has been entirely or substantially *made, manufactured, or produced* outside of the United States.

-14-

Cal. Bus. & Prof. Code § 17533.7(a) (emphasis added). There is no exclusion for raw materials in this statute.

The only authority Defendant cites is an out-of-context quote from *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1272 (2007), which states in dicta that "one would not violate the statute by making, manufacturing, or producing *merchandise* solely in the United States even though using raw materials acquired from a foreign source." MTD at 11. However, a closer reading of *Benson* reveals that it supports Plaintiffs' position. In that quote, the court was focused on *merchandise* that *did not* consist of any separate "articles," "units," or parts." *Benson* goes on to explain: "More apropos to this case, if the merchandise at issue consists of separate, identifiable components, section 17533.7 requires 'any article, unit, or part' of the merchandise to be 'entirely or substantially made, manufactured, or produced' domestically to qualify for use of a 'Made in U.S.A.' or similar label. (§ 17533.7, italics added.)" *Id.* at 1272.

At a minimum, *Benson* should be read to hold that if foreign raw materials are processed abroad and used as component parts of merchandise, the merchandise falls within Cal. Bus. & Prof. Code § 17533.7. In *Benson*, the deceptively labeled made in USA merchandise were locksets comprised of component parts, including screws and pins made in Taiwan, but the court held that Cal. Bus. & Prof. Code § 17533.7 applied. 152 Cal. App. 4th at 1273-74. Presumably, the steel (or whatever raw material was used) came from abroad. Some minimal level of processing must have then been performed to transform the raw materials into screws and pins—which are not complex parts. The situation is no different here. Processed tea leaves are obviously a separable "article, unit, or part" of the Product, which consists of tea leaves, the bags in which the leaves are contained, and other packaging. And, as discussed in more detail below, the complex process of transforming raw tea leaves to consumable tea by foreign processing plants is akin to the making of screws and pins in *Benson*.

In addition, according to FTC authority, raw materials are not categorically excluded from made in the USA regulations. Rather, a determination of whether raw

-15-

materials are included in considering a made in USA claim with respect to merchandise (i.e., not a component of the merchandise) "depends on how much of the product's cost the raw materials make up and how far removed from the finished product they are." RJN, Ex. A at 8. The FTC gives an example of a gold ring: "If the gold in a gold ring is imported, an unqualified Made in USA claim for the ring is deceptive. That's because of the significant value the gold is likely to represent relative to the finished product, and because the gold — an integral component — is only one step back from the finished article." *Id*. Here, and only to the extent the tea leaves are considered raw materials (they are not), they are akin to the gold used to make a gold ring—both are integral components that are one step removed from the finished product.

In any event, the highly-processed tea leaves which Defendant sources from foreign countries are ***not*** raw materials. Plaintiffs do not allege that Defendant uses foreign-sourced raw tea leaves to make the Products. Rather, Plaintiffs repeatedly allege that the tea leaves are not just grown in foreign countries, but they undergo substantial processing there. Here are some of the relevant allegations:

- [N]one of the Products contain any tea that was grown or processed in the United States. FAC ¶ 17.

- None of the Camellia Sinensis plant that is used to make the Products is grown or processed in the United States. Rather, all of the Camellia Sinensis plant that is used to make the Products is grown by tea plantations, and processed by tea processing plants, located in places such as Sri Lanka and India. *Id.* ¶ 18.

- [A]ll of the green, black, and oolong teas used to make the Products are made from the same Camellia Sinensis plant, which is wholly sourced from, and processed in, countries such as Sri Lanka or India. *Id.* ¶ 26.

- After describing the detailed tea processing performed at facilities like the Waltrim facility, the company representative states in the video "Tea Factories of Sri Lanka": "And this is the final result of the beautiful clean tea. No stalks, no fiber, and ready to come to Bigelow Tea." *Id.* ¶ 29.

At a minimum, this processing includes picking, cutting, measuring, weighing, drying, and fermenting the tea leaves. *See id.* ¶¶ 25, 27, 28. The statement "Blended and Packaged in the U.S.A.", *see* Defendant's RJN, Exhibits 1—4, is entirely consistent with Plaintiffs' allegations that ***none*** of the production or processing of the tea is done in the U.S. In other words, the production process, which occurs abroad, transforms the raw tea leaves to consumable form. This, by definition, means that the processed tea leaves that Defendant sources from countries like India and Sri Lanka are not raw materials. By Defendant's admission, no processing occurs in the U.S. *See* MTD at 2 (the Products are "blended, packaged, and distributed in the United States..."). *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332 (N.D. Ill. 2107) is instructive. There, the court looked to FTC guidance on "raw materials" with respect to whether Illinois unfair trade practice laws were violated by Made in USA claims where the plaintiff alleged vitamin C in pet food was sourced from abroad. The *Sabo* court first recognized that the FTC Enforcement Policy Statement "defines raw materials as 'products such as minerals, plants or animals that are processed no more than necessary for ordinary transportation.'" *Id.* at 336. Here, the tea processing described above clearly exceeds what is necessary for their ordinary transportation.

The *Sabo* court then held that the allegation that the vitamin C was "produced" or "manufactured" in a "plant" was "at odds with the FTC's definition of "raw materials." *Id.* Similarly, in *Kennedy v. Natural Balance Pet Foods, Inc.*, 2007 WL 2300746, *4 (S.D. Cal. Aug. 8, 2007), the defendant made the same argument in the context of rice protein ingredients in pet food. The *Kennedy* court held that it could not conclude as a matter of law that the rice protein was simply a raw ingredient based on the allegation that "one of the foreign components of the pet food was a 'manufactured rice protein ingredient.'" *Id.* The facts are far more compelling here. In contrast to conclusory allegations that vitamin C and rice proteins were "manufactured" abroad, which passed muster in *Sabo* and *Kennedy*, here Plaintiffs provide detailed allegations regarding the foreign processing of the tea leaves and why there are not raw materials.

Finally, the legislative purpose of Cal. Bus. & Prof. Code § 17533.7 would not be served by excluding raw materials. As the California Supreme Court recognized in *Kwikset*, "to some consumers, the 'Made in U.S.A.' label matters. A range of motivations may fuel this preference, from the desire to support domestic jobs, to beliefs about quality, to concerns about overseas environmental or labor conditions, to simple patriotism." 51 Cal. 4th at 329. These beliefs apply with equal force to food. For example, in addition to wanting to support domestic jobs and patriotism, reasonable consumers could likely believe that American raw materials that go into food are safer and of better quality than raw materials from foreign countries that go into food.

## C.    Defendant Does Not Make A Proper Qualified Made in USA Claim

Defendant argues that the statement "Blended and Packaged in the USA" which is printed in small font on the side panel of the box, and "Family Tea Blenders since 1945," which is printed on the front of the box, validly qualify the Manufactured in the USA Representations. MTD at 14; Exhibits 1-4. They do not.

First, the text of the purported disclaimers does not obviate any consumer confusion. Nowhere in the statement "Blended and Packaged in the USA" does it disclose that the tea leaves are sourced from and processed outside in the United States. Consequently, assuming arguendo that a consumer sees this statement, she is likely to believe that the tea is blended and packaged in the USA from American tea based on the Manufactured in the USA Representations. The two beliefs are not mutually exclusive. For this reason, *Bowring v. Sapporo Co.*, 234 F. Supp. 3d 386, 391-92 (E.D.N.Y. 2017), is distinguishable. There, as Defendant acknowledges, the "label disclosed that the product was imported from Canada." MTD at 14. At a minimum, a qualified Made in the USA representation should clearly disclose the presence of foreign components. *See* RJN, Ex. B at 45 (sewing machine made with primarily foreign parts that undergoes its final manufacturing step in the U.S. "should be qualified so as to indicate the presence of foreign parts (e.g. 'Assembled in USA of foreign parts').")

Second, the location of the purported disclaimers renders them ineffective. A substantial body of FTC law on qualified made in the USA statements provides that a qualified made in USA statement must be conspicuous. The qualification must be clear and in close proximity to the made in USA claim. For example, in *In the Matter of iSPRING WATER SYSTEMS, LLC* (Docket No. C-4611), April 6, 2017 Decision and Order, the FTC defined the term "clear and conspicuous" as meaning that the "required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers . . ." *See* RJN, Ex. D at 2. The Order then listed ways a clear and conspicuous disclaimer is achieved depending on the context, for example "[o]n a product label, the disclosure must be presented on the principal display panel." *Id.* at 3. FTC Advisory Opinion No. 224 sheds further light on the FTC's position on what constitutes a "clear and conspicuous disclosure": the disclosure must be "made as conspicuously as the claim 'MADE IN U.S.A.' and in close proximity thereto." RJN, Ex. E at 1324.

Neither of these principles are satisfied here. First, the "Blended and Packaged in the USA" purported disclaimer is ambiguous and incomplete: similar to the FTC example discussed above, it should at a minimum state "Blended and Packaged in the USA from tea plants grown and processed overseas" or words to that effect. Second, it is printed in an inconspicuous font on the side panel of the packaging, which is nowhere near the more prominent Manufactured in the USA Representations. And while the phrase "Family Tea Blenders since 1945" is on the front panel, it is so vague in this context as to be meaningless.

Finally, *Paz v. AG Adriano Goldschmeid, Inc.*, 2014 WL 5561024, *5 (S.D. Cal. Oct. 27, 2014) was decided before Cal. Bus. & Prof. Code § 17533.7 was amended in 2016 to add safe harbor provisions based on the wholesale value of products. This amendment and FTC guidance indicate that even qualified claims may be deceptive if a large part of the value of a good comes from foreign materials. Here Plaintiffs allege, and common-sense dictates, that the foreign grown and processed tea comprises a

-19-

substantial part of the Products' value. The FTC's position is that "[b]ecause even qualified claims may imply more domestic content than exists, manufacturers or marketers must exercise care when making these claims. That is, avoid **qualified claims** unless the product has a **significant amount** of U.S. content or U.S. processing." RJN, Ex. A at 9 (emphasis added). Based on the negligible U.S. content and processing of the Products as alleged in the FAC, as a legal matter, even an adequately qualified made in USA claim (which Defendant has not made) is not permissible.

### D.    Plaintiffs' Claims for Equitable Relief Should Not be Dismissed

Defendant contends that Plaintiffs' request for equitable relief fails because they have an adequate remedy available at law. MTD at 14-17. This is not a valid basis for dismissal, however, as Plaintiffs have the right to plead claims in the alternative, and the availability of monetary damages does not necessarily preclude a claim for equitable relief. *See Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, *7 (N.D. Cal. May 2, 2018) ("The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct."); *Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) ("plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims … in which plaintiffs seek monetary damages").

The authority Defendant cites, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) and *Gibson v. Jaguar Land Rover North America, LLC*, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020), does not change this proposition. Both only hold that the inadequate remedy at law doctrine applies to CLRA and UCL claims and that the inadequacy of a legal remedy must be pleaded. The FAC complies with this doctrine because it does plead an inadequate remedy at law. FAC ¶¶ 10-12 (alleging that Plaintiffs and other consumers are susceptible to recurring harm because they are likely to continue purchasing the Products under the mistaken belief they are made in the USA). A legal remedy alone is inadequate for Plaintiffs to obtain complete relief as Plaintiffs and consumers will suffer irreparable injury in the future, *i.e.* after damages

are awarded, in the absence of equitable relief. Plaintiffs may pursue both legal and equitable remedies if plaintiffs allege that their legal remedy alone was inadequate because the legal remedy will not prevent continuing harm. *See*, *e.g.*, *Evans v. DSW, Inc.*, 2017 WL 7058232, at *6 (C.D. Cal. Sept. 14, 2017) (plaintiff's allegations seeking to cease defendant's continuing deceptive conduct are "sufficient to allege that a damages remedy is inadequate.").

### E.    Plaintiffs Have Sufficiently Pleaded an Unjust Enrichment Claim

While unjust enrichment is a remedy and not a cause of action, a claim for unjust enrichment can be construed as a claim in quasi-contract seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Here, Plaintiffs have adequately pleaded a quasi-contract claim. Plaintiffs allege that Defendant made misleading Made in USA Representations, and that Defendant was unjustly enriched as it retained monies paid to it at the expense of deceived consumers. FAC ¶¶ 136-140. This is sufficient under *Astiana*. 783 F.3d at 762 (the plaintiffs' statement that "[defendant] had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result" is sufficient to state a quasi-contract cause of action). Defendant also argues that Plaintiffs cannot state a claim for quasi-contract while asserting a separate claim for breach of express warranty. MTD at 18. However, Rule 8(d) expressly allows pleading these claims in the alternative. *See*, *e.g.*, *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015) (collecting cases permitting "unjust enrichment and breach of contract claims to proceed simultaneously.").

### F.    Plaintiffs Have Sufficiently Pleaded Claims for Intentional and Negligent Misrepresentation

Defendant contends that Plaintiffs have not stated claims for intentional or negligent misrepresentation because they have not pleaded with specificity Defendant's false representations. This is incorrect as set forth above. Defendant next contends that Plaintiffs fail to allege Defendant's knowledge and intent. MTD at

-21-

19. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Here, it is reasonable to infer that Defendant knew that the Products were not manufactured in the U.S.A. and nonetheless represented that they were. *See Astiana,* 2011 WL 2111796, *12 (sustaining fraud claim based on allegation that "defendants 'knew or recklessly disregarded' the fact that their ice cream was not 'all natural'".) For purposes of a fraudulent or negligent misrepresentation claim, it is not necessary to allege that Defendant intended to deceive consumers: it is only necessary to allege that Defendant intentionally or negligently made a false representation and intended reliance on that representation. And there is no intent requirement at all as to UCL, CLRA, and FAL claims.

Finally, Defendant argues that Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine. MTD at 19-20. The economic loss doctrine does not apply to claims for negligent misrepresentation because "California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable." *Zakaria v. Gerber Prod. Co.*, 2015 WL 3827654, * 11 (C.D. Cal. June 18, 2015) (citations omitted). *See also Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004).

### G.   Plaintiffs Adequately Plead Breach of Warranty Claims

####    1.   Breach of Express Warranty

Plaintiffs allege that Defendant breached an express warranty under California law. To state such a claim, a plaintiff must prove that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); Cal. Com. Code § 2313(1). "[P]ackaging can serve to create part of an express warranty." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) (citation omitted);.

Here, Plaintiffs sufficiently allege breach of express warranty: (1) the Manufactured in USA Representations on each Product are an affirmation of fact or promise that the Products are indeed made in the USA; (2) Plaintiffs relied on the representations in purchasing the Products, which were part of the basis of their bargains; and (3) Defendant breached this warranty by making the Products with wholly foreign-sourced and processed tea. FAC ¶¶ 103-106. *See Rice-Sherman*, 2020 WL 1245130, *11 (promises of "Grain Free," "No Corn," and "No Soy Protein" were "sufficient under California law to constitute express warranties."). Thus, Plaintiffs' express warranty claim is adequately pleaded. In any event, whether a challenged misrepresentation constitutes an affirmation of fact, and therefore an express warranty, is normally a question of fact for the jury. *See McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) ("[W]hether seller affirmed a fact amounting to an express warranty is a question of fact"); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016) (holding that whether the term "all natural" is an express warranty is a matter of fact not appropriate for a motion to dismiss).

## 2.   Breach of Implied Warranty

Defendant contends that Plaintiffs' implied warranty claim fails because it rises and falls with Plaintiffs' express warranty claim. MTD at 20. Because Plaintiffs' express warranty claims survive, so too do their implied warranty claims.

Defendant also argues that the implied warranty of merchantability does not apply here. This warranty is far broader than described by Defendant, however. Among other things, this warranty guarantees that the product "[c]onform[s] to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f). *See also Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975) (the implied warranty of merchantability requires that the product conform to the promises or affirmations of fact made on the container or label). Plaintiffs have adequately alleged that, because the Products do not conform to the promises or affirmations of fact that

they are manufactured in the USA, Defendant has violated the implied warranty of merchantability. FAC ¶¶ 115-117.

## H.   Plaintiffs Have Standing with Respect to Unpurchased Products

Defendant argues that Plaintiffs lack standing to pursue claims with respect to Products they did not purchase. The only argument Defendant advances in support, however, is that "Plaintiffs do not provide any detail regarding the other allegedly offending products." MTD at 25.[7] In fact, Plaintiffs allege that each of the Products bear the same deceptive Manufactured in the USA Representations and submit representative images of the Products. FAC ¶¶ 31-34.

Plaintiffs have standing with respect to the Products they did not purchase under the "substantially similar product" theory *See, e.g., In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, *7 (C.D. Cal. Sept. 4, 2014) (the "'prevailing view' in the Ninth Circuit" is that class action plaintiffs can bring claims for products they didn't purchase "as long as the products and alleged misrepresentations are substantially similar.").

The Court may consider a variety of factors—including "similarity in products, similarity in claims, similarities in injury to consumers—to determine which unpurchased products can be included by plaintiffs in their class actions." *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, *6 (N.D. Cal. Mar. 13, 2014). Each of these considerations militate in Plaintiffs' favor here. First, this case involves the same type of consumer goods—tea products. Second, the design of the Products, and more importantly, the challenged Manufactured in the USA Representations, are identical across each Product. Third, Plaintiffs' theory of liability is uniform across each Product. On these allegations, the Court should find that the Products are substantially similar for purposes of standing. *See e.g., See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 935

---

[7] In the alternative, Defendant requests that the Court preemptively limit the scope of the products at issue. The Court should not consider that type of improper prospective relief.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:20-cv-06208-DDP (RAOx)

(N.D. Cal. 2014) (substantial similarity between varieties of canned tuna based on slack-fill claim); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, *13 (N.D. Cal. July 20, 2012) (substantial similarity between varieties of ice cream flavors, despite different ingredients, based on "All Natural" claim).

Alternatively, the Court could defer ruling on the issue until class certification. *See*, *e.g.*, *Kosta v. Del Monte Corp.*, 2013 WL 2147413, * 15 (N.D. Cal. May 15, 2013). At that time, Defendant can advance the same argument and the Court will be in a better position to "gauge the typicality of [Plaintiffs'] claims and [Plaintiffs'] ability to adequately represent the interests of the proposed class[ ]." *5-Hour ENERGY*, 2014 WL 5311272, *7. Defendant does not appear to contest this option. *See* MTD at 24, n. 9.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety. Alternatively, if the Court is inclined to grant any portion of the Motion, the Court should do so without prejudice, and permit Plaintiffs leave to file a second amended complaint.

DATED: October 22, 2020        Respectfully submitted,

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

By: */s/ Jason H Kim*
    Todd M. Schneider
    Jason H. Kim

**THE WAND LAW FIRM, P.C.**
Aubry Wand

*Attorneys for Plaintiffs and the Putative Class*