O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KIMBERLY BANKS and CAROL CANTWELL, on behalf of themselves and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>R.C. BIGELOW, INC., a Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20-cv-06208 DDP (RAOx)<br><br>**ORDER GRANTING CLASS CERTIFICATION, DENYING MOTIONS TO STRIKE**<br><br>[Dkt. 39, 49, 50, 51] |

Presently before the Court are Plaintiffs' Motion to Certify Class and Defendants' Motions to Strike the Expert Reports of Colin B. Weir, J. Michael Dennis, and Cory Carter. Having considered the parties' submissions, and heard oral argument, the Court adopts the following order.

I.     **BACKGROUND**

The parties are aware of the factual background in this case, as detailed in the Court's previous order. (Dkt. 22). Plaintiffs Kimberly Banks and Carol Cantwell bring suit against Defendants R.C. Bigelow, Inc. and Does 1 through 10 for allegedly selling tea

that was processed abroad with a label reading "Manufactured in the USA 100% Family Owned" (hereinafter the "Label"). Plaintiffs seek class certification as to (1) the California Consumer Legal Remedies Act ("CLRA"), (2) common law fraud and intentional misrepresentation, (3) negligent misrepresentation, and (4) breach of express warranty. Plaintiffs propose the following class:

> All natural persons who purchased at least one 18/20 count box of Bigelow Earl Grey Black Tea Caffeine, Green Tea Caffeine, Constant Comment Black Tea Caffeine, Green Lemon Tea Caffeine, Vanilla Chai Black Tea Caffeine, English Tea Time Black Tea Caffeine, Spiced Chai Black Tea Caffeine, French Vanilla Black Tea Caffeine, or Vanilla Caramel Black Tea Caffeine, labeled as "Manufactured in the USA 100% American Family Owned," at a retail store in the state of California, at any time from July 13, 2017 to the present.

## II.  LEGAL STANDARD

In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citations omitted). The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981). Rule 23(a) sets forth four prerequisites for class certification:

(1)  the class is so numerous that joinder of all members is impracticable;

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

2

Relevant here, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over individual questions . . . and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III.   DISCUSSION

### A.   Rule 23(a) Requirements

To show that class certification is warranted, Plaintiffs must show that all four prerequisites listed in Rule 23(a) are satisfied.

#### 1.   Numerosity

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants do not contest numerosity. Here, the products at issue were sold to at least 100 (and likely a great deal more) different consumers in California during the class period. (Dkt. 39-49). Thus, numerosity is met.

#### 2.   Commonality

Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted). Defendants dispute that the labels were consistent enough to satisfy the commonality requirement. Because the commonality inquiry is subsumed by the more stringent predominance inquiry, *infra* Section III.C, the court does not analyze commonality here. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997).

#### 3.   Typicality

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class

3

members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).

Plaintiffs began buying Bigelow tea in the 1980s (Cantwell) and in 2015 (Banks). (Dkt. 52-22 & 57-3, Cantwell Depo., 25:11-18, 68:17-70:4); (Dkt. 52-24 & 57-2, Banks Depo., 26:24-27:19). Banks first recalled seeing the Label in 2019, four years after she began consuming the tea and two years after the Label was launched in 2017. Banks Depo. 72:1-18. Cantwell first saw the Label around 2018. Cantwell Depo. 125:3-17. Both plaintiff representatives stopped purchasing the Products after learning that the tea was not grown in the United States. Banks Depo. 25:25-26:1.

Plaintiffs assert that they are typical of other class members, because they purchased the Products "in part based on their belief the Products were [m]ade in the USA." (Mot. at 11). Defendants argue that Plaintiffs "cannot credibly demonstrate reliance" on the Label  and are thus subject to unique defenses not applicable to other class members. (Opp. at 12-13). In support of their contention, Defendants represent that Plaintiffs, more concerned with other factors such as taste, could not even remember when the Products began to bear the Label. (Opp. at 13). Instead, Defendants characterize Plaintiffs as longtime Bigelow consumers who "do not actually care about the source of their tea." (Opp. at 10).

That Plaintiffs may have considered other factors in their purchasing decisions does not make them atypical. *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013). It is unlikely that Plaintiffs are uniquely concerned about taste compared to the rest of the class of tea purchasers, and Defendants would use the defense of lack of reliance against any plaintiffs. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 609 (N.D. Cal. 2018) (finding that, because defendants would contest that any Canada Dry purchaser made their purchase in reliance on the "made with real ginger" label, this defense was not unique to named plaintiffs and did not defeat typicality). Thus, Plaintiffs have established typicality.

4

4.      **Adequacy**

Adequacy of representation is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Inasmuch as it is conceptually distinct from commonality and typicality, this prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Thus, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985.

Defendant argues that Plaintiffs cannot adequately represent the class because they were solicited to participate in a class action lawsuit via a website. Opp. at 20. Defendant cites *Bodner v. Oreck Direct* for the proposition that an attorney who solicits clients for a class action does not meet the adequacy requirement. *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007). In *Bodner*, the court stressed that the named plaintiff had never read the complaint and exhibited "overwhelming ignorance regarding the nature of this action, the facts alleged, and the theories of relief against defendant." *Id.* at *2. Moreover, the court noted that plaintiff's attorney had previously been disqualified for bringing a class action suit using a relative as the named plaintiff. *Id.*

Here, Plaintiffs do not have a perfect memory of the labels on the products they purchased. *See, e.g.,* Banks Depo. 56:7-9, 55:22-24; Cantwell Depo 45:5-14. Nonetheless, Plaintiffs clearly reviewed the pleadings and understand the basis for their claims. *See, e.g.,* Banks Depo 91:11; Cantwell 22:1. Unlike the *Bodner* plaintiff, Plaintiffs here are not "overwhelming[ly] ignoran[t]" of the case such that they cannot adequately represent the class. Moreover, Plaintiffs' counsel have not been accused of the kind of conflicts of interest that led the *Bodner* court to refuse to certify the class. *Bodner*, 2007 WL 1223777 at *3 ("In short, the conduct in this action does not look good, does not sound good, and

does not smell good. In fact, it reeks. The court will not participate in this scheme by certifying a class."). On the contrary, Plaintiffs have participated actively in their case and declared their loyalty to the putative class. *See* Banks Decl. ¶ 12; Cantwell Decl. ¶ 12. Accordingly, Plaintiffs have established adequacy.

**B.    *Daubert* motions**

In support of their 23(b)(3) arguments, Plaintiffs supplied expert reports and testimony from Colin B. Weir, J. Michael Dennis, and Cory Carter. Defendants moved to strike the reports and testimony of all three witnesses, on the grounds that they fail to meet the standards required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Where "scientific, technical, or other specialized knowledge will assist the trier of fact" to understand evidentiary or factual issues, an expert witness who is qualified by "knowledge, skill, experience, training, or education" may "testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Trial courts have a gatekeeping function regarding expert testimony. *Daubert* 509 U.S at 597. The focus should be "solely on principles and methodology, not on the conclusions they generate." *Id.* at 595. Factors relevant to reliability include, but are not limited to, "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Wendell v. GlaxoSmithKline, LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted). The proponent of the expert testimony has the burden of establishing that the relevant admissibility requirements are met by a "preponderance of the evidence." *Daubert*, 509 U.S. at 592 n.10 (citations omitted).

Here, Plaintiffs rely on their three experts to prove that their claims satisfy the elements of Rule 23(b)(3). Each expert's admissibility is discussed in turn.

6

### 1.     Carter

Carter is a regulatory specialist in the food labeling field. (Carter Decl. ¶19). Plaintiffs offer Carter's opinion to establish how the food labeling industry analyzes "Made in USA" claims. (Carter Opp. at 4). Specifically, Plaintiffs refer to Carter's opinion to establish that the Label is an "unqualified Made in USA claim" satisfying the deception element of their breach of warranty claim. (Mot. at 17).

Defendants move to strike Carter's report and testimony on three grounds. First, they argue that Carter's conclusions about the Label are irrelevant, because they apply only to federal and state "Made in USA" statutes that do not form the basis of any of Plaintiffs' remaining claims. Second, they argue that Carter's opinions about the applicability of federal and statute statutes to the Label are impermissible legal conclusions.

To the extent that Carter's report contains extraneous information not relevant to the Court's decision on class certification, or states impermissible legal conclusions, the Court disregards that information without striking the entire report. Nonetheless, Carter's opinion is relevant and admissible to support Plaintiffs' contention that the deceptiveness of the Label can be proved through common evidence. Carter's report and testimony incorporates FTC and California statutory guidance, as well as Carter's own opinion, regarding what a reasonable consumer would come to believe based on the Label.

### 2.     Weir

The motion to strike Weir's report is discussed *infra*, section III.C.3.

### 3.     Dennis

Dennis is a consumer survey expert whom Plaintiff retained to measure consumer perceptions of the Label. (Dennis Decl. ¶20). Dennis concludes, based on his survey, that 84.4% of consumers understood the Label to mean that the tea was "processed" in the USA.

Defendants first move to strike Dennis' report because it does not test what the word "processed" means to consumers in this context. As discussed below, the Court does not find the word "processed" to be as inherently ambiguous as verbiage in the cases Defendants cites.

Defendants further argue that the Court should strike Dennis' report because it uses only close-ended questions, leading to biased and unreliable results. But unlike the close-ended questions in *In re Kind LLC "Healthy & All Natural" Litig.*, 2022 WWL 4125065 (SDNY Sep. 9, 2022), here the survey included contrasting options consistent with Defendants' competed theory. That is, Dennis surveyed consumers about whether the Label conveyed that the tea was "blended" and "packaged" in the United States, which is Defendants' suggested interpretation of the Label. *See, e.g.*, Dkt. 49 (arguing that consumers polled in Weir's survey may have "believed correctly that Bigelow's product is blended and packaged in the United States."). Thus, the Court finds Dennis' report is sufficiently reliable and relevant to support Plaintiffs' argument that consumers interpret the Label to convey that the tea was 100% "processed" in the United States.

### C. Rule 23(b)(3) Requirements

A class action may be certified under Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[1] In making its findings on these two issues, courts may consider "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any

---

[1] Defendants do not dispute the superiority element of the 23(b)(3) inquiry. As Plaintiffs assert, individual Class members' damages are modest relative to the time and expense required to properly prosecute these claims. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (affirming finding of superiority in case where individual damages are too small "to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony"). Accordingly, the Court finds the superiority element is met here.

litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action." *Id.*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Even if Rule 23(a)'s commonality requirement may be satisfied by [a] shared experience, the predominance criterion is far more demanding." *Id.* at 623-24. Predominance cannot be satisfied if there is a much "greater number" of "significant questions peculiar to the several categories of class members, and to individuals within each category." *Id.* at 624. However, Rule 23(b)(3) predominance "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

### 1.   Exposure

Defendants argue that individual questions predominate about class members' exposure to the Label, because: (1) products with the Label appeared at different times, for different durations, due to "haphazard" shipment to stores; and (2) the Label was not prominent enough to infer class-wide exposure. (Opp. at 16, 23).

### a)   Staggered Rollout

Plaintiffs' proposed class targets products bearing the Label at a retail "at any time from July 13, 2017 to the present." Defendants' argue that this timeframe contains "tremendous variability in the distribution timeline of products" bearing the Label, such that individual questions about "when and what version of the packaging consumers purchased" predominate. Defendants represent that they approved the Label on October 17-18, 2017, and products bearing the Label were then "haphazardly shipped over a nine-week period." (Opp. at 16; *see* Dkt. 52-1 at ¶14 (breakdown of ship dates)).

The issue of label variability is not unique to this case. In *McCrary v. Elations*, Plaintiffs sought to certify a class consisting of all purchasers of a product since January 28, 2009, when "clinically-proven" claims were on the packaging. *McCrary v. Elations Co., LLC*, 2014 WL 1778243 at *7 (C.D. Cal. Jan. 13, 2014). The defendants argued that the allegedly false representation was not on every available product during the class period. *Id.* at *9. The court nevertheless certified the class, noting that the class definition—as here—excluded purchasers whose products did not bear "clinically-proven" claims. *Id.* at *13. In doing so, the court distinguished *Pfizer*, in which plaintiffs sought to certify a class consisting of "[a]ll persons who purchased Listerine with labels that state 'as effective as floss,' in California, from June 28, 2004 through January 7, 2005." *Id.*; *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 626 (Cal. Ct. App. 2010)).

The *Pfizer* court noted that the many Listerine bottles purchased during the class period, "if not most," did not actually contain the allegedly misleading claim, because Listerine only included the claim on 19 out of their 34 kinds of mouthwash. *Pfizer*, 182 Cal. App. 4th at 631. The label in *McCrary*, on the other hand, was featured on "the packaging of every unit for an extended period." *McCrary*, 2014 WL 1778243 at *13 (citing *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009)).

Likewise here, even accounting for the nine-week delay between Label approval and shipping for some products, the Label was printed on all products identified in the class definition throughout the vast majority of the period between October 2017 and 2021. See Declaration of John McGraw ISO Opp., Dkt. 52-1 at ¶ 9, 10. Thus, like *McCrary* and unlike *Pfizer*, the staggered rollout of the Label here does not create individual questions that predominate over common questions. That said, the class definition should not begin months before the Label was first approved, let alone shipped. The class definition must be adjusted to begin in October 2017. *See Brown v. Hain Celestial Group*,

10

1   *Inc.*, 2014 WL 6483216 at *8 (N.D. Cal. Nov. 18, 2014) (permitting similar class redefinition

2   and collecting relevant cases).

3                          **b)      Prominence of Label**

4          Defendants further argue that even as to products that did bear the Label, the

5   Label was not sufficiently prominent to assume that all purchasers saw the Label.

6   Defendants cite to *Zakaria v. Gerber* and *Hadley v. Kellogg Sales Co.* to support their

7   arguments.

8          In *Zakaria v. Gerber*, the court held that a statement on an infant formula label was

9   not prominent enough to infer that consumers would have seen the statement. 2016 WL

10  6662723 at *8.



25         In *Hadley v. Kellogg Sales Co.*, the court cited *Zakaria* for the proposition that the

26  phrase "wholesome goodness" in small font, in the middle of a block of text, on the back

27

28                                      11

1  panel of a package was not "sufficiently prominently displayed to warrant an inference

2  of class-wide exposure." 324 F.Supp. 3d 1084, 1099-1100 (citations omitted).

3        Here, the Label is on the back of tea boxes, but it is not in the middle of a block of

4  text. It is set off to the side in bold type.

5  The Label is more prominent than those defeating predominance in the cases Defendant

6  cites. "It is reasonable that at least some consumers noticed it." *Zakaria*, 2016 WL 6662723

7  at *18.

8                **2.**    **Reliance**

9        Defendants next argue that individual questions predominate about whether

10  consumers relied on the Label. Namely, Defendants argue that consumers have different

11  understandings of what "Manufactured in the USA means" and consumers bought the

12  products for "a myriad of reasons" unrelated to the Label.

13              **a)**    **Common meaning**



25        Plaintiffs do not dispute that Defendants blend and package their tea in the United

26  States, but they assert that Defendants at least partially "process" their tea abroad. (*See*

27

28                                    12

Complaint ¶2). Plaintiffs submitted an expert report using survey data to conclude that 84.4% of consumers understand "Manufactured in the USA" to mean that the tea was "processed" in the United States and 69.8% of consumers understand "Manufactured in the USA" to mean that the tea was "processed, blended, and packaged" in the United States.[2] (*See* Dkt. 39-55, Dennis Report ¶¶ 31-32). Defendants argue, in turn, that individual questions about what "manufactured" or "processed" means defeat predominance.

Courts have held that where challenged representations are "inherently ambiguous," the issue of consumers' likely deception is not subject to common proof and predominance is not met. *See Viczarra v. Unilever*, 339 F.R.D. 530, 547 (N.D. Cal. 2021). Specifically, misrepresentation claims concerning the terms "natural vanilla," "all natural," and "energy" have been found ambiguous enough to defeat class certification on predominance grounds. *Id.*; *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-2438, 2017 WL 2559615, at *4 (C.D. Cal. June 7, 2017). Courts have rejected ambiguity arguments, on the other hand, as to the terms "real ginger" and "imported from Italy," *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *9 (N.D. Cal. July 15, 2016).

Plaintiffs' theory of liability is that the Label is misleading since Defendants grow and partially process their tea abroad. (Mot. at 4) (asserting that Defendants grow, pick, roll, oxidize, dry, and sort their tea abroad); (Opp. at 4) (acknowledging that the tea leaves are at least partially processed abroad). Here, the term "manufactured" is less ambiguous than "natural" and "energy;" as discussed in this Court's previous order, "manufacture" means to make something from raw materials by hand or machinery.

---

[2] In their Reply, Plaintiffs state that "Dennis's findings also show that consumers believe the tea is sourced in the USA," but the Court was unable to locate any such finding in Dennis's report. *Cf.* Reply at 20-21.

(Dkt. 22 at 7). Furthermore, Plaintiffs have pointed to evidence that consumers understand "manufactured" in this context to mean "processed." (Dkt. 39-55, Dennis Report ¶31). The Label is not so ambiguous as to create individual questions defeating predominance.

### b)   Materiality to Consumers

Lastly, Defendants argue that individual questions predominate about materiality, because Plaintiffs cannot show that the Label factored into consumers' purchase decisions. (Opp. at 18). A misrepresentation is "material" under the CLRA if a reasonable consumer would attach importance to its existence. *Townsend*, 303 F.Supp.3d at 1029-30. Because of this objective standard, courts have held that CLRA and related California common law claims are "particularly suited for class treatment." *See Brickman v. Fitbit*, 2017 WL 5569827 at *6 (N.D. Cal. Nov. 20, 2017). That said, Plaintiffs must still "point to some type of common proof" establishing that the Label factors into consumers' purchase decisions. *See Badella v. Deniro Marketing*, 2011 WL 5358400 at *9 (N.D. Cal. Nov. 4, 2011).

Here, Plaintiffs cite to "Made in USA laws," which assertedly prove that "the legislature has deemed that the practice constitutes a 'material' misrepresentation." (Reply at 10) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013); *Vizcarra*, 339 F.R.D at 548). Indeed, statutory and case law support the proposition that a reasonable consumer would attach importance to the allegedly misleading statement at issue here. *See, e.g.*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) (statutory and internal case citations omitted); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (citing FTC guidance). Thus, unlike the cases cited by Defendants, individual questions about the materiality of the 100% Manufactured in the USA label do not defeat predominance. *Cf. Townsend*, 303 F.Supp.3d at 1044-45.

14

### 3. Damages

To show that common questions predominate over individual ones, Plaintiffs must also show that "damages are capable of measurement on a classwide basis." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast v. Behrend*, 569 U.S. 27, 34 (2013)). Plaintiffs plan to establish classwide damages by using conjoint analysis to calculate a price premium, as set forth in Weir's report. Defendants argue that Weir's report should be excluded for the below reasons, and that the Court should, for the same reasons, hold that Plaintiffs have not carried their burden to establish a method for calculating classwide damages.

Defendants first argue that Weir lacks "specialized education, training, or experience" in conducting the survey portion of conjoint analysis. Defendants list several cases in which Weir appeared as an expert witness, but another expert conducted the survey portion of the conjoint analysis. In a rebuttal declaration, Weir clarified that he did design the survey portion of several conjoint analyses. (Dkt. 59-1 at ¶22). Further, Weir reports he has completed graduate-level coursework on conjoint analysis. (Dkt. 39-56 at ¶3). The Court finds that Weir has sufficient education and experience under Rule 702. *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014).

Defendants further argue that Weir's conjoint analysis should be excluded because: (1) it tests the entire Label ("Manufactured in the USA 100% American Family Owned") rather than the "Manufactured in the USA 100%" message alone, and (2) it fails to account for supply-side factors.[3]

### a) Lack of Specificity

Any price premium in Weir's results is, according to Defendants, attributable to the "Family Owned" statement and therefore not at issue in this suit. But unlike in

---

[3] Defendants also argue that Weir's report does not account for those consumers who believe "manufactured" means "blended and packaged" and therefore were not deceived by the label. For the reasons discussed in section III.C.2, the Court disagrees.

*McMorrow v. Mondolez*, Plaintiffs seek damages related to the whole Label. (Complaint ¶57; *see also* Dkt. 57-2 at 67:6-13 (opining that repeated references to "America" on product packaging "screamed America"); Dennis Decl. (opining that the Label is an express unqualified Made in USA Claim under federal law and FTC guidance relating to "Made in USA" claims); Order re: MTD, Dkt. 22 ("Collectively, the representations "America's Classic", "Manufactured in the USA," "100%," and "American Family Owned" contribute to the alleged deceptive impression that the Products are manufactured in the United States."); *cf McMorrow v. Mondolez*, 2020 WL 1157191 (S.D. Cal. March 9, 2020). Defendants, for their part, dispute that any component of the Label influenced purchasers. (Opp. at 19) ("The labeling statements that refer to "American" or "America" on the packaging of Bigelow tea, including "America's Classic" and "Manufactured in the USA," had zero impact on purchasing interest."). That Defendants' expert disagrees with Weir on the impact of the Label on purchasing interest goes to the weight of Weir's testimony rather than its admissibility. *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

### b)    Supply-Side Factors

Defendants additionally ask the Court to "follow the line of cases finding conjoint analysis does not properly account for supply-side factors." (Dkt. 64 at 5). Indeed, a few District Court opinions have held that conjoint analysis did not appropriately estimate class-wide damages "by looking only to consumer demand while ignoring supply." *Saavedra v. Eli Lilly & Co.*, No. 2:12-CV-9366-SVW, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014); *see also In re NJOY, Inc. Consumer Class Action Litig.*, No. 14-cv-428-JFW (JEMx), 2016 WL 787415 (C.D. Cal. Feb. 2, 2016); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 500 F. Supp. 3d 940, 949 (N.D. Cal. 2020); *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 238-39 (S.D.N.Y. 2019).

Plaintiffs distinguish the present case from Defendants' proffered cases, and Defendants do not rebut these distinctions. (*See* Dkt. 64 at 5:1-12). Indeed, the allegations

16

and products at issue here resemble the "classic mislabeling case" in which conjoint analysis "makes sense." See *In re GM*, 407 F.Supp. at 238-39. Weir used actual historic prices and quantities as the basis for his survey, thus sufficiently accounting for supply-side factors. See *Hadley*, 324 F. Supp. 3d at 1105 (collecting cases supporting the proposition that conjoint analysis is acceptable to calculate classwide damages "when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period") (citations omitted). Thus, the Court declines to "wade into" the so-called "debate" about whether conjoint analysis categorically fails to satisfy *Comcast* and instead holds that the cases Defendants cite are distinguishable. To the extent that Defendants' expert can challenge Plaintiffs' price premium by showing that Defendants did not charge more for products with the Label, that evidence goes to the weight of Weir's testimony rather than its admissibility. In sum, the Court finds that Weir's report is admissible and adequate, at the class certification stage, to show that damages are capable of measurement on a class-wide basis.

### 4. Conclusion

For the forgoing reasons, the Court finds that common questions predominate over individual ones. The class is bound by common questions, including: (1) whether reasonable consumers would believe, based on the Label, that Defendants' products were 100% manufactured and processed in the United States, and (2) whether Defendants' products actually were 100% manufactured and processed in the United States.

/ / /

/ / /

/ / /

/ / /

/ / /

17

IV.     **<u>CONCLUSION</u>**

For all the above reasons, the Court GRANTS Plaintiffs' Motion for Class

Certification, modifying its definition to reflect the first ship-date:

All natural persons who purchased at least one 18/20 count box of Bigelow Earl Grey
Black Tea Caffeine, Green Tea Caffeine, Constant Comment Black Tea Caffeine, Green
Lemon Tea Caffeine, Vanilla Chai Black Tea Caffeine, English Tea Time Black Tea
Caffeine, Spiced Chai Black Tea Caffeine, French Vanilla Black Tea Caffeine, or Vanilla
Caramel Black Tea Caffeine, labeled as "Manufactured in the USA 100% American
Family Owned," at a retail store in the state of California, at any time from October 17,
2017 to the present.

**IT IS SO ORDERED.**

Dated:  July 31, 2023

_____ _____

DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

18