O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KIMBERLY BANKS and CAROL
CANTWELL, on behalf of themselves
and all others similarly situated,

                              Plaintiffs,

        v.

R.C. BIGELOW, INC., a corporation; and
DOES 1 through 10, inclusive,
                              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  2:20-cv-06208-DDP-RAOx

**ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT and
DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

[Dkts. 92, 97, 101 & 106]

        Presently before the Court are Plaintiffs' Motion for Partial Summary Judgment (Dkt. 92) and Defendant's Motion for Summary Judgement (Dkt. 101).  Having considered the parties' submissions and heard oral argument, the Court adopts the following order granting the Plaintiffs' Motion for Partial Summary Judgment and denying Defendant's Motion for Summary Judgement.

**I. BACKGROUND**

        Plaintiffs Kimberly Banks and Carol Cantwell ("Plaintiffs") bring a punitive class action challenging Defendant's labeling of its tea products.  *See generally* First Amended Complaint ("FAC"), Dkt. 11.  Defendant R.C. Bigelow, Inc. ("Defendant" or "Bigelow") is

a tea company located in the United States.  Dkt. 101-7, Deposition of John McCraw ("McCraw Depo.") at 13:1–18:11.

All of Defendant's products at issue ("Products") are tea bags packaged in rectangular cartons.  Dkt. 11.  The tea leaves contained in the Products are all grown abroad, predominately being sourced from China, India, and Sri Lanka.  McCraw Depo. at 64:15–17; 25:13–27:9.  The tea leaves are processed abroad prior to Defendant's import of the leaves.  *Id.* at 20:6–16; Dkt. 101-12; Dkt. 101-8 at 6–13.  Tea leaves must be processed in order to be consumable and suitable for use in commercial tea products.  *Id.*  The processing of tea leaves includes plucking, withering, rolling, oxidizing, drying, and sorting.  *Id.*  It is this processing which determines the type of tea — black, green, or oolong.  McCraw Depo. at 21:8—2:15, 29:7–30:2.  Bigelow then imports the tea leaves, blends and packages the tea into its tea bag Products, and distributes the Products from its U.S. facilities.  Dkt. 101-16; Dkt. 101-13; Dkt. 101-14; Dkt. 101-15; Dkt. 92-7, Deposition of Cynthia Bigelow ("Bigelow Depo.") at 100:18–101:2.

In 2017, Bigelow launched its TeaProudly marketing campaign.  Dkt. 92-2, Deposition of Christopher Costello ("Costello Depo.") at 102:2–104:7, 154:17–23, 189:22–190:15; Dkt. 92-3; Dkt. 92-4.  As part of the TeaProudly campaign, Bigelow included a logo on back of the Products' packaging which stated "MANUFACTURED IN THE USA 100% AMERICAN FAMILY OWNED" ("the Label").  Dkt. 92-8.  Plaintiffs filed suit in 2020 alleging violations of California Business and Profession Code Section 17533.7, California Consumer Legal Remedies Act ("CLRA"), California False Advertising Law ("FAL"), and California Unfair Competition Law ("UCL") as well as claims for breach of express warranty, breach of implied warranty, intentional misrepresentation/fraud, negligent misrepresentation, and quasi-contract/unjust enrichment/restitution based upon the Label.  *See generally* FAC.

Plaintiffs only sought class action certification as to (1) CLRA, (2) common law fraud and intentional misrepresentation, and (4) breach of express warranty claims.  Dkt.

2

83.  The Court granted class certification with the following class definition:  All natural persons who purchased at least one 18/20 count box of Bigelow Earl Grey Black Tea Caffeine, Green Tea Caffeine, Constant Comment Black Tea Caffeine, Green Lemon Tea Caffeine, Vanilla Chai Black Tea Caffeine, English Tea Time Black Tea Caffeine, Spiced Chai Black Tea Caffeine, French Vanilla Black Tea Caffeine, or Vanilla Caramel Black Tea Caffeine, labeled as "Manufactured in the USA 100% American Family Owned," at a retail store in the state of California, at any time from October 17, 2017 to the present. Dkt. 83.

Plaintiffs seek summary judgement on the issues deception/falsity and reliance/materiality as to the "MANUFACTURED IN THE USA 100%" statement ("Challenged Statement" or "Manufactured in the USA 100% statement") which are common to all four certified claims, leaving only the issues of Defendant's state of mind and damages for trial.  Plaintiffs' Motion for Partial Summary Judgment ("*Pls' Mot.*"), Dkt. 92 at 2:1–8.  Defendant opposed. Defendant's Opposition to Plaintiffs' Motion ("*Def.'s Opp.*"), Dkt. 107.  Plaintiff replied. Plaintiffs' Reply in Support of Motion for Partial Summary Judgment ("*Pls.' Reply*"), Dkt. 118.  Defendant also moves for summary judgment on these issues as well as on the issues of damages and scienter.  Defendant's Motion for Summary Judgment ("*Def.'s Mot.*"), Dkt. 101 at 1:5–25.  Plaintiffs opposed. Plaintiffs' Opposition to Defendant's Motion ("*Pls.' Opp.*"), Dkt. 113.  Defendant replied. Plaintiffs' Reply in Support of Motion for Partial Summary Judgment ("*Def.'s Reply*"), Dkt. 122.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is no genuine dispute of material facts "[w]here the record taken as a whole could not a lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  *See Anderson*, 477 U.S. 242. Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 256.  It is not the Court's task "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Counsel have an obligation to lay out their support clearly.  *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Id.*

## III. DISCUSSION

The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer" including "deceptive representations or designations of geographic origin in connection with goods or services."  Cal. Civ. Code § 1770(a)(4).  To establish a claim under the CLRA, a plaintiff must show that the defendant engaged in one of the § 1770 proscribed practices, i.e. in the instant case made deceptive statements about the geographic origins of a product,

4

and plaintiff was harmed by the defendant's conduct, i.e. the plaintiff relied on the defendant's deceptive statements. *See* Jud. Council of Cal. Civ. Jury Instruction 4700.

Similarly, "[t]o prevail on a breach of express warranty claim under California law, a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015); *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010). Advertising statements, such as those on packaging, can be warranty statements. *See Rosales v. FitFlop USA, LLC* , 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012).

"The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014). "The essential elements of a claim for negligent misrepresentation are the same as for intentional misrepresentations, except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Id.*

Both Plaintiffs and Defendant are seeking summary judgment on the elements of deception/falsity and reliance/materiality which are common to Plaintiffs' claims of violations of the CLRA, breach of express warranty, fraud, and negligent misrepresentation. *See generally Pls.' Mot.*; *see Def.'s Mot.* at 6:11–13:14. Defendant also seeks summary judgement on the issues of state of mind for Plaintiffs' misrepresentation claims and damages. *See Def.'s Mot.* at 13:15–16:10.

**A. Falsity and Deception**

While Plaintiffs' claims of fraud, misrepresentation, and breach of express warranty require a false statement, the CLRA proscribes not only false statements but also the use of statements that "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber*

5

*Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation omitted).  However, when

a statement is false, it is inherently deceptive and, therefore, proscribed by the CLRA.  *See*

*Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167 (2018) ("there is no protection for literal

falseness" under California law); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310,

327–28 (2011) (stating that to adequately allege UCL and FAL violations for Made in the

USA claims, which are governed under the same standards as the CLRA, the plaintiff

had to allege,  "(1) [defendant] labeled certain locksets with "Made in U.S.A." or a similar

designation, (2) these representations were false, (3) plaintiffs saw and relied on the

labels for their truth in purchasing [defendant's] locksets, and (4) plaintiffs would not

have bought the locksets otherwise."); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017

(9th Cir. 2020).

      The underlying facts are not in dispute.  All of the tea in Defendant's Products is

foreign-sourced.  McCraw Depo. at 64:15–17.  Defendant's black tea is imported from

India, Assam, and Sri Lanka, while its green tea is imported from China.  *Id.* at 25:13–

27:9.  It is further undisputed that the raw tea leaves undergo a process of withering,

rolling, oxidizing, drying, and sorting abroad prior to import.  *Id.* at 20:6–16; Dkt. 101-12;

Dkt. 101-8 at 6–13.  It is this foreign processing that determines the resulting type of tea –

green, black, or oolong – and it is this processing that renders the tea consumable.

McCraw Depo. at 21:8 – 2:15, 29:7–30:2, 15:15–16:19; Dkt. 101-8 at 6–13; Bigelow Depo. at

99:22–100:17.  Defendant then blends and packages the tea into the tea bags Products and

distributes the Products.  Dkt. 101-16; Dkt. 101-13; Dkt. 101-14; Dkt. 101-15; Bigelow

Depo. at 100:18–101:2.  Though the parties do not dispute these facts, they dispute

whether these facts render the "Manufactured in the USA 100%" statement false.

      Plaintiffs argue that the "Manufactured in the USA 100%" statement is literally

false because Defendant's tea leaves are grown and processed abroad prior to import and

the Challenged Statement is, therefore, inherently deceptive as a matter of law.  *See Pls.'*

*Mot.* at 6:1–13:15.  Defendant argues that Challenged Statement is true because it is in

reference to tea bags, not the component loose leaf tea, and that Plaintiffs have not put forth sufficient evidence to establish that a reasonable consumer would be misled by the Challenged Statement.  *See Def.'s Mot*. at 6:11–10:2; *see also Def.'s Opp*. at 4:10–8:16.  The Court agrees with Plaintiffs.

Though Plaintiffs are no longer pursuing their claim under Section 17533.7, which makes unlawful the use of "Made in the U.S.A.," "Made in America," or "similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States," the Court finds no substantive difference between the terms "made" and "manufactured" for the purposes of a CLRA claim involving alleged misrepresentations of United States origin. Cal. Bus. & Prof. Code Section 17533.7; *see also Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 685 (2006).  The fact that Section 17533.7 equates "manufacture" abroad with being "made" abroad evidences that the Legislature believes the terms to be largely interchangeable.  Judges should not engage in fashioning excessively nuanced exceptions to these consumer protection statutes, such as finding some artificial distinction between the words made and manufacture.  Otherwise, the marketing industry will undoubtedly attempt to sidestep consumer protection statutes and mislead consumers through clever and ambiguous terminology, the very outcome these statues seek to prevent.  Indeed, the Legislature has specifically instructed that the CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code. § 1760.

The term "made" means "artificially produced by a manufacturing process." *Colgan*, 135 Cal. App. 4th at 685.  The term "manufacture" means "something made from raw materials by hand or machinery" and "describe[s] the physical process of transforming raw materials into goods."  *Id*.  "Thus, one would not violate the statute by making, manufacturing, or producing merchandise solely in the United States even

though using *raw materials* acquired from a foreign source." *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1272 (2007) (emphasis added). Defendants argue that the term "manufacture" is used in reference to the assembled tea bags of which tea leaves are a raw material. *See Def.'s Mot.* at 7:20–26. Through blending and packaging, the tea leaves are transformed into a new product, a tea bag. *See id.* at 8:21–9:5. Therefore, according to Defendant, the "Manufactured in the USA 100%" statement is true. *See id.* at 9:6–7.

However, under California law, a Made in the U.S.A. claim is false if a substantial or significant portion of the component parts of the product are manufactured abroad. *See Colgan*, 135 Cal. App. 4th at 682–83; *see also Benson*, 152 Cal. App. 4th at 1264. In *Colgan*, the California Court of Appeals affirmed summary judgment on CLRA claims finding that Made in the USA representations were deceptive as a matter of law where "a significant portion of the various parts of the product were manufactured abroad." *Colgan*, 135 Cal. App. 4th at 682. The *Colgan* court rejected the argument that the products were not substantially made outside of the USA because they were engineered, assembled, and finished in the U.S., citing the Federal Trade Commission guidelines which state "consumers are likely to understand an unqualified U.S. origin claim to mean that the advertised product is 'all or virtually all' made in the United States." *Id.* at 682–83 (citing Federal Trade Commission, Enforcement Policy Statement on United States Origin Claims, 62 Fed. Reg. 63756, 63768 (Dec. 2, 1997)). Likewise in *Benson v. Kwikset*, the California Court of Appeals held that plaintiffs sufficiently stated a cause of action for a product that was labeled Made in the USA, but some screws and pins were made in Taiwan and assembly of a component part occurred in Mexico. *See Benson*, 152 Cal. App. 4th at 1264; *see also Brady*, 26 Cal. App. 5th at 1167 (stating "[l]iteral falsity was also key to this court's majority opinion in *Benson v. Kwikset Corp.*," where though the locks were "mostly or 'substantially' made in the United States, [] they were not *completely* made here") (emphasis in original).

8

Here, it is undisputed that the tea leaves are not of U.S. origin and undergo processing abroad.  McGraw Depo. at 64:15–17; 20:6–16; Dkt. 101-12; Dkt. 101-8 at 6–13.  Yes, a tea bag is a distinct product from loose leaf tea.  But the tea leaves, which are the key component of the tea bags Products, undergo a "physical process" that "transforms" them from "raw" unconsumable tea leaves into a consumable "good" of a distinct variety and flavor profile (black, green, or oolong tea) outside of the United States.  The distinctive aspects of tea, the flavor and quality, are made or destroyed during this process.  Defendant's own promotional video refers to the actions which happen abroad as "the steps of tea-making."  Dkt. 118-3.  That the Defendant takes further action to create the end products, the tea bags, does not negate the fact that the tea leaves have already been processed abroad and are no longer a raw material prior to import.  McCraw Depo. at 20:6–16; 21:8—22:15, 29:7–30:2; 15:15–16:19; Dkt. 101-12; Dkt. 101-8 at 6–13.  Bigelow's Rule 30(b)(6) designee acknowledged that manufacture includes a broader set of activities than the blending and packaging that occurs in the United States.  Costello Depo. at 173:9–21.

Further, the tea leaves inside are vital to the tea bags as consumers purchase tea bags for the tea itself.  In fact, the tea leaves are not only a component part of the tea bag; they are the very essence of the tea bag.  Consumers purchase the Products for the consumable, the tea, which just so happens to be conveniently packaged in a bag for steeping.  The *Colgan* trial court found that component parts of the multi-purpose, multi-component tools at issue were the "significant parts of the tools, why the people buy them" and were the "guts of the tools."  *Colgan*, 135 Cal. App. 4th at 680.  Likewise, the tea leaves are the "guts" of the tea bag Products.  If consumers purchase a multi-purpose, multi-component tool for the competent tool parts, then undoubtedly consumers purchase a tea bag for the tea leaves inside.

At oral argument, defense counsel contended that *Colgan* is not applicable, as it did not involve a consumable food product.  However, the Court sees no reason to

distinguish between consumables and non-consumables in this context.  To the contrary, the principles underlying *Colgan* and the consumer protection statutes are more important when applied to a product that consumers put in their bodies.  Suppose, for example, that a purveyor of baby food sourced peach puree from the Chernobyl area, then pasteurized that puree in the United States and packaged it in a convenient pouch labeled "Made in the USA" or "Manufactured in the USA."[1]  A young parent purchasing such a product could hardly be said to be less interested or less deserving of consumer protections than the multi-purpose tool users in *Colgan*.

Accordingly, the Court finds that the Challenged Statement, "MANUFACTURED IN THE U.S.A. 100%," is literally false and GRANTS Plaintiffs' Motion for Summary Judgment on the element of deception/falsity.

**B.  Reliance**

Reliance is also a common element to all of Plaintiffs' claims.  Reliance is established through a showing of exposure and materiality.  *See* Jud. Council of Cal. Civ. Jury Instruction 4700.  In a class action, actual reliance by the named plaintiff is all that is required and need not be proved as to every class member.  *See id*.  "Rather, if all class members have been exposed to the same material misrepresentations, class-wide reliance will be inferred, unless rebutted by the defendant."  *Id.*  Plaintiffs seek summary judgment on materiality, asserting that class-wide exposure has already been establish. *See Pls.' Mot.* at 13:16–15:15; 6:7–9.  Conversely, Defendant seeks summary judgment on

---

[1] Moreover, and putting aside any question of Defendant's motivation in this case, the Court has serious concerns about the use of the term "manufactured" in connection with a food product whose fundamental appeal, or "guts," as *Colgan* put it, is not far removed from the component ingredients.  With the possible exception of certain ultra-processed products, the word "manufactured," even if not inherently deceptive, obfuscates the nature of a food product.  Because consumers would not typically consider food to be the result of a "manufacturing" process, use of that misnomer would give rise to so many possible interpretations as to deprive the word of any informative content.

1   reliance, asserting that there is insufficient evidence of both exposure and materiality.

2   *See Def.'s Mot.* at 10:3–13:14.

3       **1. Exposure**

4         Plaintiffs argue that class-wide exposure was already established at the class

5   certification stage and that the class definition presupposes exposure as the Challenged

6   Statement was printed on all of the Products. *Pls.' Mot.* at 3:13–18; 6:7–9; *see also Pls.' Opp.*

7   at 11:6–21.  Defendant correctly points out that "the analysis at class certification is very

8   different from the evaluation at summary judgment." *Def.'s Reply* at 6:16–17.  The

9   standards and burdens at class certification differ from those at summary judgment and

10  class certification is not a determination on the merits.  *See Eisen v. Carlisle & Jacquelin*, 417

11  U.S. 156, 178 (1974).  Yet, a showing of class-wide exposure sufficient to establish

12  predominance at the class certification stage creates a rebuttable presumption that there

13  was in fact class-wide exposure.

14        The Court found at the class certification stage that the "Manufactured in the USA

15  100%" statement was prominent enough to presume class-wide exposure.  Dkt. 83.  Yet,

16  Defendant advances the same argument against exposure it made at the class

17  certification stage, that the Challenged Statement was not sufficiently prominent to

18  presume class-wide exposure because it was on the back of the box likening the Label to

19  the challenged statements in *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal.

20  2018) and *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200, 2016 WL 6662723 (C.D. Cal.

21  Mar. 23, 2016).  *See Def.'s Mot.* at 10:11–11:4.  Consistent with the class certification order,

22  the Court finds that the challenged statement is more prominent that those in

23  Defendant's cited cases, even though it is on the back of the box, as it is set off to the side

24  in bold type, and Defendant has not pointed to any evidence to rebut the presumption of

25  class-wide exposure.  Dkt. 83 at 12:3–7.  Thus, class-wide exposure is presumed at

26  summary judgment.

27  ///

28                                        11

### 2. Materiality

Both parties seek summary judgment on the issue of materiality.  *See generally Pls.'*
*Mot.*; *Def.'s Mot.*  "A representation is 'material,' [] if a reasonable consumer would attach
importance to it or if 'the maker of the representation knows or has reason to know that
its recipient regards or is likely to regard the matter as important in determining his
choice of action.'"  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (quoting
*Kwikset*, 51 Cal. 4th at 332).

Defendant argues that the evidence demonstrates the Challenged Statement is not
material to consumers and, thus, it is entitled to summary judgment on the issue of
materiality.  *See Def.'s Mot.* at 11:5–13:14.  Defendant points to its market research data
indicating that consumers purchase tea for a variety of reasons that are "overwhelmingly
unrelated to the source of the constituent tea leaves."  *Def.'s Mot.* at 11:17–12:6.
"However, under California law, [a p]laintiff is not required to prove that the challenged
[] statements were the sole or even the predominant or decisive factor influencing the
class members' decisions to buy the challenged products."  *Hadley v. Kellogg Sales Co.*, 324
F. Supp. 3d at 1116–17 (internal quotations omitted).  That other factors are material to a
consumer's purchasing decision does not establish that the origin of the tea would be
immaterial to a reasonable consumer.  Consumers may purchase a product for a myriad
of reasons that are not mutually exclusive.  *See Krommenhock v. Post Foods, LLC*, 334 F.R.D.
552, 566 (N.D. Cal. 2020).  Additionally, Defendant's market data evidence did not test
consumer reaction to the origin of the tea leaves or the specific statement at issue –
manufacture in the United States.  *See* Dkt. 101-18; Dkt. 101-19; Dkt. 101-20; Dkt. 101-21.

Defendant also relies on the expert opinion of Larry Chiagouris ("Chiagouris")
that the Challenged Statement had no effect on consumer purchasing behavior based
upon a survey he conducted.  *See Def.'s Mot.* at 12:7–25; Dkt. 101-25, Expert Report of
Chiagouris ("Chiagouris Report"), ¶¶ 19, 46–71.  Yet, Plaintiffs point to the price
premium calculated by their expert Colin Weir ('Weir") as evidence that consumers

1    purchased the product based on the Challenged Statement.  *See Pls.' Opp.* at 13:15–22; *see*

2    *generally* Dkt. 113-62, Declaration of Weir ("Weir Decl.").  Ultimately, it would be for the

3    jury to decide which expert report is more credible.  *See City of Pomona v. SQM N. Am.*

4    *Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).

5           Further, Defendant argues that the "Manufactured in the USA" statement was not

6    material to even the named plaintiffs, as evidenced by the fact that they had been

7    purchasing the Products for years prior to the addition of the statement to the packaging.

8    *See Def.'s Mot.* 13:1–14; Dkt. 101-24, Deposition of Kimberly Banks ("Banks Depo.") at

9    26:24–27:19; Dkt. 101-23, Deposition of Carol Cantwell ("Cantwell Depo") at 25:11–18,

10   68:17–70:4.  However, the named plaintiffs have testified that the challenged statement

11   was important to their buying decision which is sufficient evidence to the contrary to

12   survive summary judgment.  Banks Depo. at 126:4–16; Cantwell Depo. at 57:16–24.

13   Further, Defendant's argument that it was not material because the named plaintiffs were

14   already Bigelow purchasers is more appropriate for a jury to consider than for the Court

15   as it goes to the credibility of the named plaintiffs' testimony.  Thus, Defendant is not

16   entitled to summary judgment on the issue of materiality.

17          Plaintiffs argue that false or misleading U.S. origin claims are material as a matter

18   of law because the Legislature has proscribed them.  *See Pls.' Mot.* 14:3–15:15.  The Court

19   agrees.  While materiality is generally a question of fact, when the legislature has seen fit

20   to specifically outlaw certain statements in order to protect consumers, such statements

21   are material as a matter of law.  *See Kwikset*, 51 Cal. 4th at 329, 333 (Cal. 2011); *Hinojos*, 718

22   F.3d at 1107; *see also Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082-LB, 2015 WL

23   3398415, at *7 (N.D. Cal. May 26, 2015).

24          In *Kwikset*, the California Supreme Court stated that "[t]he Legislature has

25   recognized the materiality of this representation by specifically outlawing deceptive and

26   fraudulent 'Made in America' representations," citing § 17533.7 and Cal. Civ. Code § 1770

27   (a)(4).  *Kwikset*, 51 Cal. 4th at 329.  The *Kwikset* Court went on to note that, "the

28                                            13

Legislature has by statute made clear that whether a product is manufactured in the United States or elsewhere is precisely the sort of consideration reasonable people can and do attach importance to in their purchasing decisions." *Id.* at 333. Likewise in *Hinojos*, the Ninth Circuit acknowledged that "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos*, 718 F.3d at 1107.

Defendant argues that the Plaintiffs are actually seeking a rebuttable presumption that the challenged statement is material if found to be false. *See Def.'s Opp.* at 8:20–23. However, this misses the point. Surveys do not trump Legislative intent. The very purpose of consumer protection laws is to ensure that companies do not mislead consumers about the material aspects of a product, such as origin. When the Legislature has deemed a particular statement material enough to warrant legislative action, a defendant cannot rebut such a determination through self-serving surveys and market research. Further, even if it were a rebuttable presumption, Defendant's above referenced evidence would be insufficient to rebut the presumption. Thus, the Court concludes that the Challenged Statement is material as a matter of law.

### C. Damages

Defendant also seeks summary judgment on the issue of damages arguing that Plaintiffs' evidence on damages fails to isolate a price premium attributable only to the Challenged Statement ("Manufactured in the USA 100%"). *See Def.'s Mot.* at 14:1–8. Specifically, Defendant argues that the damages model, as set forth in the form of a price premium calculation by Weir, was based on the entire 100% logo which included both "MANUFACTURED USA 100%" and "100% AMERICAN FAMILY OWNED" but Plaintiffs theory of liability is based only on the "Manufactured in the USA 100%" statement and, thus, Plaintiffs failed to provide evidence a price premium attributable only to the allegedly misleading statement. *Id.* However, the Court has already found

Weir's testimony admissible and that it is tethered to the Plaintiffs theory of liability because Plaintiffs seek damages related to the whole of the Label.  Dkt. 83 at 15–17.  That Defendant disagrees with Weir's model and/or the source of any price premium, this would be an argument for the jury as to whether Plaintiffs have proved their claim, not for the Court at summary judgment.  *See Kurtz v. Costco Wholesale Corp.*, 818 Fed. App'x 57, 62 (2d Cir. 2020).

Defendant further argues that Plaintiffs have failed to provide evidence that all members of the class have suffered an injury sufficient to confer Article III standing because the damages model includes individuals who did not see the Challenged Statement, were not influenced by it, or were not misled by it.  *See Def.'s Mot.* at 14:9–15:5.  However, this argument distorts Plaintiffs' price premium model which is based on the higher market price for the Products as a result of the Challenged Statement.  Weir's Decl., ¶¶ 98–101.  This price premium would have been paid by all class members without reference to their seeing, caring about, or interpretation of the Challenged Statement.  Weir's Decl., ¶ 72.  Thus, all class members have suffered an injury because all class members would have paid a price premium based on the Challenged Statement, even if some individual class members were unaware that they were doing so.

Defendant also argues that punitive damages are not available because there is no evidence of actual damages.  *See Def.'s Mot.* at 15:7-12.  "It is a well-settled rule that there can be no award of punitive damages without a finding of actual damages."  *Contento v. Mitchell*, 28 Cal. App. 3d 356, 357 (1972).  Actual damages in this context of consumer deception/fraud are "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received."  *Colgan*, 135 Cal. App. 4th at 675; *see also Zakaria v. Gerber Prods. Co.*, 755 Fed. App'x 623, 625 n.2 (9th Cir. 2018).  Plaintiffs have put forth evidence of actual damages to the class members through Weir's calculated price premium based on the Challenged Statements.  Weir's Decl., ¶20.  Thus, punitive damages are not precluded by a lack of actual damages.

15

1
2

Ultimately, Plaintiffs have provided sufficient admissible evidence of damages to present to a jury.

3

### D.  Knowledge and Intent

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Defendant argues that summary judgment is warranted on Plaintiffs' misrepresentation claims, fraud and negligent misrepresentation, as well as punitive damages, because Plaintiffs have failed to provide any evidence of Bigelow's knowledge of the falsity of the Challenged Statement or that Bigelow made the statement with the intent to defraud or induce reliance.  *See Def.'s Mot.* at 16:1–4; 15:15–20.  Punitive damages may be awarded under California law when "oppression, fraud, or malice" is established.  Cal. Civ. Code. §3294 (a), (c).  Fraud and negligent misrepresentation both require an intent to induce reliance.  *See Cisco Sys.*, 77 F. Supp. 3d at 897.  However, fraud requires knowledge of the falsity of the misrepresentation, while for negligent misrepresentation the defendant need not know the statement was false but instead had no reasonable grounds for believing it to be true.  *See id.*  Generally, whether one made a false statement with knowledge of its falsity or without reasonable grounds to believe it was true and if it was made with the intent to defraud or induce reliance are questions of fact for a jury to decide.  *See Quality Wash Group V, Ltd. v. Hallak*, 50 Cal. App. 4th 1687, 1696–97 (1996); *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1417 (1988).

19
20
21
22
23
24
25
26
27

Plaintiffs point to sufficient evidence from which a reasonable jury could conclude that Bigelow knew that "Manufactured in the USA 100%" was false or, at the very least, had no reasonable grounds for believing it.  *See* Dkt. 113-17; Dkt. 113-7; Dkt. 113-56; Dkt. 113-5; Dkt. 113-6; Dkt. 113-13; Dkt. 113-14; Dkt. 113-15; Dkt. 113-16; Costello Depo. at 130:25-131:17, 189:22-190:25, 240:9-241:25, 243: 3-6; Bigelow Depo. at 42:14–45:7, 66:22–69:3, 89:11–21.  Further, there is evidence that Defendant intended for its statement to induce reliance, as the very purpose of advertising a particular statement on a package is to induce reliance.  *See* Costello Depo. at 150:12–151:18; 239:20–23; Bigelow Depo. Ex. 7 at 42:1–13; *see also Kwikset*, 51 Cal. 4th at 328 ("The marketing industry is based on the

28

16

premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source."). Ultimately, Bigelow's knowledge of the potential falsity of its statement and Bigelow's intent in making the statement are questions best left for a jury to decide. And, because Plaintiffs may be able to establish fraud, punitive damages may be awardable. Therefore, the Court denies summary judgment on these issues.

**IV. CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

Dated: July 8, 2024

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

17