Timothy K. Branson (SBN 187242)
tbranson@grsm.com
Thomas R. Watson (SBN: 227264)
twatson@grsm.com
Patrick J. Mulkern (SBN 307272)
pmulkern@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7789
Facsimile: (619) 696-7124

Attorneys for Defendant R.C. BIGELOW, INC.

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BANKS and CAROL CANTWELL, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>R.C. BIGELOW, INC., a corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-06208 DDP-RAOx<br><br>**REPLY IN SUPPORT OF MOTION TO EXCLUDE POROD & WAND AS TRIAL WITNESSES**<br><br>Date: March 31, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Dean D. Pregerson<br>Courtroom: 9C<br><br><u>Complaint Filed</u><br>July 13, 2020<br><br><u>Final Pretrial Conference</u><br>March 31, 2025<br><br><u>Trial Date</u><br>April 1, 2025 |

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

THE COURT SHOULD EXCLUDE POROD AND WAND. ..... 2

- I. PLAINTIFFS SEEK TO PERPETUATE A DOUBLE STANDARD. ..... 2
- II. POROD AND WAND'S UNTIMELY DISCLOSURE COMPELS THEIR EXCLUSION. ..... 3
  - A. Plaintiffs Do Not Effectively Contest The Serial Non-Disclosures. ..... 3
  - B. Plaintiffs' Failure To Disclose Trial Witnesses Is Unjustified And Prejudicial, Requiring Exclusion. ..... 3
    - 1. Plaintiffs' Excuse-Making Is Unpersuasive. ..... 5
- III. POROD AND WAND REMAIN INDEPENDENTLY INADMISSIBLE ON ADDITIONAL GROUNDS. ..... 8
  - A. Porod's Testimony Is Inadmissible. ..... 8
    - 1. Porod Lacks Personal Knowledge. ..... 8
    - 2. Porod Cannot Vouch For The Mystery Projections or His Employer's General Reliability Or Reputation. ..... 12
  - B. Attorney Wand Should Not Be Permitted To Testify. ..... 13
    - 1. Wand Cannot Authenticate The Mystery Sales Projections. ..... 13
    - 2. Wand Cannot Testify On Plaintiffs' Or The Class's Behalf. ..... 14

CONCLUSION ..... 14

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kendon Indus., LLC v. Towblazer, Inc.*, No. 8:23-cv-000732-FWS-DFM, 2024 WL 5275547 (C.D. Cal. Nov. 8, 2024) .......... 7

*Mass Probiotics, Inc. v. Aseptic Tech., LLC*, No. SA CV 16-1394-DOC, 2017 WL 10621233 (C.D. Cal. Dec. 21, 2017) .......... 4

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) .......... 3, 4

**Rules**

Fed. R. Civ. P. 26 .......... 7

Fed. R. Civ. P. 26(a) .......... 1, 7

Fed. R. Civ. P. 26(a)(1) .......... 3, 5, 7

Fed. R. Civ. P. 26(a)(2) .......... *passim*

Fed. R. Civ. P. 26(a)(3) .......... 3, 5, 6, 7

Fed. R. Civ. P. 30(b)(6) .......... 11

Fed. R. Civ. P. 37(c) .......... 7

Fed R. Evid. 403 .......... 11

Fed R. Evid. 602 .......... 8, 12

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## INTRODUCTION

Says Plaintiffs' opposition, Robert Porod's late disclosure as a witness in serial, years-long violation of each Rule 26(a) subpart, amid trial's second approach, was somehow critical to save their damages expert Colin Weir's parroted tally of the mystery sales projections upon which the class depends, even though Porod admitted knowing nothing about them.

And Bigelow, in jeopardy of millions, Plaintiffs say, must only learn how Porod supposedly saves Weir's class-critical damages tally when Weir announces it for the first time as a climactic trial surprise, when jurors hear what the Court calls this case's most significant issue.

That Bigelow has no idea what Weir will say, and no opportunity to prepare its own expert to rebut it…well, that's just the latest extraordinary indulgence Plaintiffs expect the Court to grant them to Bigelow's sharply accumulating prejudice, growing ever since decertification was due six months ago on the *first* eve of trial.

Left so desperate by inexcusable neglect of their basic responsibilities in class litigation, Plaintiffs also resorted to designating their own attorney as a trial witness at the eleventh hour. The opposition makes no dispute that attorney Wand's trial testimony will also be a complete, prejudicial surprise.

Its excuse, that the unknown, exotic provenance of the mystery sales projections is somehow an uncontested formality, is a patent falsehood. Their origin and significance, if any, has become the case's central dispute by Plaintiffs' own plan and design.

Having wasted the unwarranted chance the Court gave them to obtain real testimony from the mystery sales projections' actual authors, Plaintiffs cannot corrode the trial's integrity to Bigelow's further prejudice by calling their own attorney to the stand.

///

The opposition leaves it to the Court to close the extraordinary course of prejudice it ordained by letting these terminal proceedings endure past last October's final pretrial conference over Bigelow's objections.

**<u>THE COURT SHOULD EXCLUDE POROD AND WAND.</u>**

**I. PLAINTIFFS SEEK TO PERPETUATE A DOUBLE STANDARD.**

It is rich for Plaintiffs to protest that Bigelow's motion supposedly varies from the rules in this-or-that technical dimension. For the last six months the entire existence of these class proceedings has been an extraordinary, prejudicial variance from the rules' imperative that class plaintiffs arrive at trial with an admissible, *Comcast*-compliant damages model.

Of course, if Plaintiffs had made timely disclosure of the trial witnesses they need to support their damages model in the first place, then there would have been time for Bigelow to meticulously observe the rules' formalities. Ultimately, it is telling that Plaintiffs' lead argument seeks to dispose of the motion on technical grounds, not its merits. But it is also fitting. It illustrates the double standard they must perpetuate to keep this case alive. For Bigelow: enforce strict compliance of all standards across the board. For Plaintiffs: set aside rules and precedent to indulge glaring, serial failures, no matter the prejudice to Bigelow.

Especially absurd is Plaintiffs' charge that Bigelow violated the Court's limit of five motions in limine. Motions in limine were due in September. How was Bigelow supposed to move to exclude witnesses in September whom Plaintiff did not disclose until March 3? Similarly non-sensical is Plaintiffs' protest that "motions must be filed 28 days before the hearing date" or "three weeks before the final pretrial conference." When this motion was filed, the second FPTC was set for March 24. In other words, Plaintiffs are saying Bigelow should have moved to exclude Porod and Wand on March 3, the *same day* Plaintiffs disclosed them. Or, for the motion to be heard at the second FPTC, Plaintiffs wanted the

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

motion to be filed *a week before* they disclosed the witnesses. These arguments are frivolous.

## II. POROD AND WAND'S UNTIMELY DISCLOSURE COMPELS THEIR EXCLUSION.

### A. Plaintiffs Do Not Effectively Contest The Serial Non-Disclosures.

In this 2020-filed case, the opposition leaves it effectively uncontested that Plaintiffs' serial failures to disclose Porod or Wand until March 3, 2025, constitute compound violations of parts (1), (2), and (3) of Rule 26(a)'s mandatory disclosure obligations. The opposition addresses the reality of those violations with undeveloped or even parenthetical denials. Dkt. 235-1 at 5 ("inaccurate"); *id*. at 9 ("to the extent there was any late disclosure (there was none)"). Instead, the opposition beats an immediate retreat to empty excuses for the sharply prejudicial surprises.

### B. Plaintiffs' Failure To Disclose Trial Witnesses Is Unjustified And Prejudicial, Requiring Exclusion.

Plaintiffs fall gravely short of their burden on this motion to show that their serial violations of the disclosure rules were somehow harmless. *Yeti By Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1107 (9th Cir. 2001) ("the burden is on the party facing sanctions to prove harmlessness"). In fact, the opposition *confirms* that Plaintiffs seek to ambush Bigelow with 100% surprise testimony at trial concerning damages expert Colin Weir's tally of the mystery sales projections, a case-dispositive topic the Court found "presents the most significant issues in the case." *See* FPTC Transcript (Oct. 11, 2024), p. 8, ll. 20-22.

Plaintiffs offer the testimony of the late-disclosed Porod as support for Weir's parroting of the mystery sales projections. Indeed, the opposition now frames Porod's testimony as so critical to Weir's ersatz "opinion" of damages that Porod's exclusion would be a "severe sanction" "tantamount to dismissal." Dkt. 235-1 at 8. This tracks the Court's determination at October's final pretrial

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

conference that neither Weir's parroted tally, nor the class which depends upon it, can proceed without testimony to furnish the missing facts and unknown methods that anonymous IRI experts used to model the mystery sales projections.

Yet, ***it remains a complete surprise whether, how, why, and to what extent Colin Weir will testify that anything he learned from Robert Porod supports, changes, or calls into question Weir's tally of the mystery sales projections, what this Court called "the most significant issues in the case."*** Even though the opposition frames Porod's testimony as support for Weir's tally, so critical that Porod's exclusion would be a "severe sanction," ***Plaintiffs never supplemented Weir's Rule 26(a)(2) expert disclosures to reflect a word about Porod or his testimony.*** If they had, Bigelow would have reconvened Weir's deposition to examine his account of the impact of Porod's untimely testimony upon Weir's undertaking. *Yeti By Molly*, 259 F.3d at 1107 (affirming exclusion where opponent would be prejudiced by having to depose expert following untimely disclosures made a month before trial).[1]

Worse, Weir cannot amend his reports or sit for another deposition without yet another last-minute trial continuance at additional prejudice to Bigelow over its objection. *Mass Probiotics, Inc. v. Aseptic Tech., LLC*, No. SA CV 16-1394-DOC (GJSx), 2017 WL 10621233, at *5 (C.D. Cal. Dec. 21, 2017) ("The Ninth Circuit has made clear that late disclosure of information required by Rule 26(a) is not harmless where it requires discovery to be reopened and a new schedule to be created.").

The opposition has no good answer to any of this because there simply is none. Incredibly, it argues that Bigelow simply must be forced to wait and hear

[1] Much less has Bigelow had the opportunity to set its own expert to work refuting a Porod-related supplement from Weir that has never come. Plaintiffs hope that Bigelow's expert, like its counsel, will simply have to listen carefully for any changes or additions to Weir's testimony at trial and then scramble to rebut new matter on the fly.

for the very first time what support Weir will claim to draw from Porod at the same time jurors hear it. Plaintiffs glibly offer that Bigelow "can raise the objection then" (dkt. 235-1 at 9), ignoring that trial by ambush is the rules' antithesis, the epitome of prejudice. Far from overcoming their burden on this motion, Plaintiffs' opposition confirms and underscores the prejudicial surprise on the critical, class dispositive issue for trial.

As for attorney Wand, his trial testimony, if any, also remains a prejudicial surprise. The opposition does not even argue that Wand's untimely disclosure was somehow harmless. To be sure, the opposition's general, non-binding characterization about what Wand may or may not testify if he takes the stand is meaningless on this motion. It remains beyond dispute that Wand's untimely disclosure deprived Bigelow of any opportunity to examine him under oath at a deposition to learn and probe the actual specifics of his testimony ahead of trial. The vague few words the opposition offers about attorney Wand's would-be trial testimony is no substitute for a timely opportunity to examine and nail down his story's specifics under oath before he takes the stand. Like Weir's Porod-inspired surprise testimony about the mystery sales projections, attorney Wand's trial testimony would be prejudicial ambush, incurable absent another last-minute, prejudicial continuance for still more overtime discovery.

**1. Plaintiffs' Excuse-Making Is Unpersuasive.**

The opposition suggests that Plaintiffs' serial, compound failures to disclose Porod under parts (1), (2), or (3) of Rule 26(a) were somehow excused because "his identity was unknown" until Plaintiffs finally got around to subpoenaing testimony from IRI after October's final pretrial conference. That is a galling argument and no excuse in the least. Indeed, *why* was "his identity…unknown"? It was because Plaintiffs inexcusably neglected their basic burdens of proof throughout four years of litigation. The fact that Plaintiffs never bothered to timely uncover the identity of a single witness affiliated with the outfit

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

that sold them the mystery sales projections is not an excuse or justification for their failure to disclose such a witness until the final approach to trial. It's circular: the omission itself as its own excuse.

From day one of this case, it was always Plaintiffs' burden, and their burden alone, to identify and disclose all witnesses they supposedly need to support or maintain their damages model and its reliance on the mystery sales projections. *See* FPTC Transcript (Oct. 11, 2024), p. 38, ll. 13-14 (Court to Plaintiffs: "you always have the burden of going forward"). That basic imperative became all the more urgent for them once they conceived and successfully executed their strategy to see that classwide damages would become this case's predominant focus. Dkt. 92-1 at 8; dkt. 129.

The opposition also suggests that the Rule 26(a)(3) violation might be excused in that Bigelow should have known by the time of Porod's November 2024 declaration "that both Porod and Wand *could* be witnesses." Dkt. 235-1 at 7 (emphasis added); *id*. (Porod "*could* be called") (emphasis added). Not so. The final pretrial disclosures required by Rule 26(a)(3) are not satisfied by leaving it to one's opponent to survey the record to speculate who might or might not take the stand at trial. If that were the law, Rule 26(a)(3) disclosures would be pointless.

The same goes for the opposition's argument about Porod's deposition. That a witness sat for deposition does not confer notice that he will take the stand at trial. In fact, Porod's deposition as IRI's dead-end designee gave ample reason for Bigelow to conclude he *would not* appear at trial, given that Porod confirmed over and over that he knows positively *nothing* about the mystery sales projections attorney Wand custom-ordered for Bigelow's teas in California. Dkt. 216-1 at 4-16 (briefing each dimension of Porod's admitted ignorance by citation to his admissions at deposition). As such, Porod's know-nothing deposition testimony joined Colin Weir's failure to supplement his expert reports as strong signals that Plaintiffs would not seek to introduce any testimony from Porod at trial.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

On the back foot, Plaintiffs adopt the remarkable affectation that they somehow presumed Bigelow, the *defendant*, might call Porod to the stand. Dkt. 235-1 at 8 ("presumably Bigelow would be seeking to call Porod as a witness"). Of course, the opposition declines to venture an explanation why Bigelow would possibly seek to prove Plaintiffs' case for them, much less by calling a witness who knows nothing about the mystery sales projections in the first place. If such pretenses pass as Rule 37(c) excuse-making, the rule means nothing.

Finally, even if constructive speculation were enough to satisfy Rule 26(a)(3)'s requirement to disclose trial witnesses, the earlier violations of parts (1) and (2) of Rule 26(a) would remain. *Kendon Indus., LLC v. Towblazer, Inc.*, No. 8:23-cv-000732-FWS-DFM, 2024 WL 5275547 at *3 (C.D. Cal. Nov. 8, 2024) (Rule 26(a)(3) pretrial disclosures are "not intended for late disclosure of previously known information" that required earlier disclosure under Rule 26's other mandates.). Plaintiffs inexcusably failed to make any disclosure whatsoever of Porod and Wand as persons supposedly holding knowledge necessary to support their expert's damages model until after last fall's final pretrial conference. The law required Plaintiffs to disclose such witnesses in their initial disclosures, in their expert disclosures, or in timely supplements to those disclosures. They never did so, and the opposition ventures no valid excuse for those additional violations of Rule 26(a). They *cannot* be excused because they trace to Plaintiffs' fundamental, years-long neglect of their basic responsibilities to construct and prove a classwide damages model by timely-disclosed, admissible evidence.

That neglect continued even after the Court granted them the extraordinary, *sua sponte* reprieve of a last-minute trial continuance for discovery they should have completed years ago. Rather than follow the rules' requirement to supplement Weir's expert disclosures, they *still* failed to do so, leaving Bigelow simply to guess whether, how, and why Weir will tell jurors that anything he

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

learned from Porod either supports, changes, or calls into question Weir's parroting of the mystery sales projections, the "most significant issue[] in the case." *See* FPTC Transcript (Oct. 11, 2024), p. 8, ll. 20-22.

## III. POROD AND WAND REMAIN INDEPENDENTLY INADMISSIBLE ON ADDITIONAL GROUNDS.

Notwithstanding the opposition, both Porod and Wand's testimony remains inadmissible for additional, independent reasons.

### A. Porod's Testimony Is Inadmissible.

#### 1. Porod Lacks Personal Knowledge.[2]

The opposition misconstrues the categorical scope of Bigelow's Rule 602 objection to Porod. He has no admissible personal knowledge to convey at trial -- period. The opposition pretends that Bigelow's challenge is confined to the undisputed, class-dispositive reality that Porod, like Weir, has no idea which anonymous IRI experts applied what algorithms and other projection methodologies to what sight-unseen retailer data, if any, in order to generate the mystery sales projections Weir tallied.

Bigelow's challenge is not so limited. It extends to each of the three topics for which the opposition proposes Porod's testimony, including (1) authentication. First, Porod has no personal knowledge by which to authenticate the spreadsheets of mystery sales projections Weir totaled up. Porod did not author the spreadsheets, took no part in their preparation, and does not even know who did. Dkt. 216-2 (Ex. K) at 106:1-3, 77:13-78:8. He said it might have been someone

[2] The opposition falsely represents that the Court somehow already ruled that Porod has a foundation of personal knowledge from which to testify at trial. It has made no such ruling. The parties' previous examination of Porod's deposition testimony solely concerned the motion to exclude the mystery sales projections and Weir's tally of them. That briefing was not addressed to Porod's admissibility as a trial witness, not least because Plaintiffs had not even disclosed Porod as a trial witness by the time that briefing concluded in January. Dkt. 216-1. They did not do so until March 3. Dkt. 223.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

working overseas in India. *Id.* at 78:9-20. Nor did Porod produce the spreadsheets to Plaintiffs. Dkt. 153-5 (Ex. C) at BANKS00070 (Porod did not produce the initial spreadsheet in Dec. 2021); *id.* at BANKS00077-78 (same for spreadsheet produced in Aug. 2023). He could not even recall reviewing them before production, could not say whether and how they had been altered, or didn't know whether they are subject to corrective updates that never took place prior to production. Dkt. 216-2 (Ex. K) at 80:10-23, 81:7-13, 90:18-91:4, 102:22-103:3.

Quite apart from not knowing who extracted the mystery sales projections from IRI's databases and compiled them into the spreadsheets, Porod also has no idea, none whatsoever, who among IRI's anonymous experts actually modeled the sales projections in the first place. Dkt. 216-2 (Ex. K) at 46:2-47:8 ("Our data scientists are the ones that are responsible for that, and I'm not one of them."); 61:8-19, 84:15-85:7, 87:2-6. In all, Porod has no basis in personal knowledge to say that the spreadsheets Weir tallied were genuine compilations of those unnamed experts' sales projections for Bigelow's teas.

Aside from his inability to authenticate the mystery sales projections Weir tallied, the opposition also supposes that Porod has something admissible to say about their (2) "contents." He does not. Bigelow's opening memorandum explicated in detail Porod's multiple admissions of his profound ignorance across each possibly relevant dimension. In response, the opposition cites no testimony from Porod meeting their burden to establish his purported personal knowledge of the spreadsheets' "contents." As Bigelow already fully expounded, he has *nothing* admissible to say on that topic because he had *nothing* to do with the spreadsheets, much less the anonymous IRI experts' generation of the mystery sales projections forming their "contents."

The opposition advances one downright falsity that calls out for special refutation. It suggests that Porod testified that 87% of the summed total of the mystery sales projections Weir tallied reflect what Plaintiffs call "pure census

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

data," while some 12% is extrapolated. ***Porod testified nothing of the sort, which is why the opposition cites no such testimony.*** To be clear, ***Plaintiffs' __counsel__, not Porod nor Weir, contrived those numbers*** as non-evidentiary speaking matter in their previous briefing. Dkt. 210-1 at 13-14. It's as if attorney Wand intends to take the stand not just as an untimely-disclosed percipient witness, but a never-disclosed damages expert, too. *Id*. Those figures are a Rube Goldberg contraption of counsel's own "aggregat[ed]" and "weighted" inferences from Porod's irrelevant testimony about what IRI generally tends or aspires to do on a nationwide basis in other engagements. *Id*. They are not based on any knowledgeable testimony from Porod or Weir concerning what the anonymous IRI experts *actually did* on *this* engagement to project sales of Bigelow's teas in California.

To be sure, Porod would lack personal knowledge for any such statements. Like Weir, Porod has *never even seen* whatever underlying retailer "census data," if any, the anonymous IRI experts used to project Bigelow's California tea sales. *Nobody has*, least of all attorney Wand or any other Plaintiffs' attorney. Let alone has Porod (or Weir, for that matter) tallied the sight-unseen census data and compared it to Weir's tally of the mystery projections to calculate what counsel call their attorney-"aggregate[ed]," attorney-"weighted" figures of 87%, 12%, or anything like them. If Porod, Weir, or Plaintiffs' counsel had ever seen the underlying retailer data (if there is any), then they could have simply stated *that* total of actual sales, given that retail sales, like damages, are expressed in dollars, not back-of-the-envelope percentages contrived by attorneys.[3]

[3] In fact, the opposition itself shows up the falsity of its suggestion that Porod somehow has personal knowledge to say what proportion of the mystery projections reflect actual retailer data of Bigelow tea sales. The opposition concedes that Plaintiffs will not "offer at trial" any Porod testimony about whatever unknown projection algorithm the anonymous IRI experts applied to the sight-unseen, missing retailer data. That necessarily means that Porod, like Weir,

In all events, as noted above, Weir has not supplemented his Rule 26(a)(2) expert disclosures to reflect anything he learned from Porod or Porod's deposition. Least of all has Weir issued a supplemental disclosure adopting or duplicating Plaintiffs' counsel's 87%-12% Rube Goldberg contraption of aggregated, weighted inferences they cooked up from Porod's irrelevant testimony about what IRI aspired to do for nationwide projections on other engagements, versus the "one-time, ad hoc" projections Plaintiffs custom-ordered for California to suit their litigation purposes. Since it does not exist in Weir's reports, it does not exist in this case. Weir did not supplement his reports, so Bigelow has no idea what Weir would say on the stand about counsel's 87%-12% contrivance, having never had the opportunity to examine him at deposition about it, nor anything else to do with Porod or his testimony.

Finally, the opposition proposes that Porod knows (3) "Circana's practices regarding the maintenance of retailer sales data." Yet, like Weir, Porod took no part in modeling the projections comprising the spreadsheets. Like Weir, he has never even seen the totally missing underlying "retailer sales data," *if any*, that IRI's anonymous experts used as the basis for modeling the spreadsheets' projections of Bigelow's tea sales in California. Dkt. 216-2 (Ex. K) at 82:19-84:13. He has no foundation to testify about "retailer sales data" he did not gather or *even review*, much less validate.

Even if Porod might generally know about "Circana's practices" on other engagements for other clients, he has no basis to testify whether or not the anonymous experts who generated the mystery sales projections followed those practices for the "one-time, ad hoc" reports attorney Wand custom-ordered here to suit his litigation purposes. Untethered to the actual projections at issue, Porod's

---

has no basis to testify that the algorithm was to sum up the sight-unseen, missing retailer data and then simply add estimated sales comprising some 12% of the total.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

generalized testimony about "Circana's practices" on other assignments would have no probative value, confuse jurors, and merit exclusion under Rule 403, a point the opposition conspicuously ignores and thereby concedes.

Finally, the opposition suggests that Porod's designation as Circana's dead-end witness at a Rule 30(b)(6) deposition somehow blows open gaping exceptions to the hearsay rules or Rule 602's requirement that a trial witness actually know what he's talking about. None of the cases the opposition cites announces such a remarkable proposition. Yes, Porod had a duty to prepare himself in order to testify as his employer's deposition mouthpiece. No, he simply *did not do that*, as his deposition transcript patently reveals. He has no personal knowledge nor any admissible hearsay to relay at this trial concerning the anonymous IRI experts' mystery sales projections for Bigelow's teas.

### 2. Porod Cannot Vouch For The Mystery Projections or His Employer's General Reliability Or Reputation.

Given Porod has nothing factual to say about the mystery sales projections Weir tallied, all that's left is Plaintiffs' intent to use Porod to puff up the projections by bolstering IRI's reputation in general. The opposition does not credibly contest the inadmissibility of such testimony. For one, it makes no dispute that Porod can offer no opinions, expert or otherwise, about IRI's supposed general reliability or the reliability of the mystery projections in which he took no hand.

Beyond that, whether *other* entities used or valued *other* sets of IRI's expert sales projections concerning *other* products in *other* geographies for *other* purposes has nothing to do with the reliability of the mystery sales projections for Bigelow's teas in California that IRI's anonymous experts modeled for Weir to tally here.

Even if such testimony had a non-zero probative value, the opposition ignores and thereby concedes that any slight relevance would be heavily

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

outweighed by the prejudice and confusion of misleading jurors to believe Porod validated or vouched for the mystery sales projections when, in fact, he had nothing whatsoever to do with them.

Moreover, considering that he lacks personal knowledge to authenticate them in the first place, Porod has no basis to testify that the "one-time, ad hoc" mystery sales projections Weir tallied represent even the same *type* of projections for other products that other entities used for their other purposes.

**B. Attorney Wand Should Not Be Permitted To Testify.**

**1. Wand Cannot Authenticate The Mystery Sales Projections.**

According to the opposition, Plaintiffs intend their attorney Wand to take the stand at trial for at least two related and robustly contested purposes. First, recognizing that Porod's multiple admissions at deposition eliminated his ability to authenticate the spreadsheets of mystery sales projections, Plaintiffs hazard that their attorney Wand can somehow authenticate them. He cannot. Attorney Wand has no basis in personal knowledge to testify that the spreadsheets at issue are genuine compilations of the anonymous IRI experts' sales projections for Bigelow's teas. Plaintiffs' contrary assertion that he somehow developed such personal knowledge in ways still unknown to Bigelow at this second eve of trial underscores part of the prejudice of their failure to timely disclose their attorney as a witness.

The same goes for Plaintiffs' plan for attorney Wand to narrate a link in the spreadsheets' hazy chain of custody. It purportedly began with the expertise of anonymous data scientists, then continued with an anonymous employee who compiled their projections somewhere in India, and concluded with significant, unexplained discrepancies between Plaintiffs' custom-ordered specifications and the spreadsheets Weir ultimately tallied.

Since Bigelow had no opportunity to take attorney Wand's deposition to learn the specifics of his story, it now must either await his surprise trial testimony

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

or suffer another last-minute trial continuance for more discovery over Bigelow's objection -- that is, unless the Court grants this motion or concludes the prejudice entirely by excluding the mystery sales projections and Weir's inadmissible tally.

**2. Wand Cannot Testify On Plaintiffs' Or The Class's Behalf.**

Finally, the opposition does not overcome the long-settled rule barring attorney as trial witness. To deflect from the prejudice attorney Wand's taking the stand would work upon Bigelow and the integrity of these proceedings, the opposition resorts to posing the mystery sales projections' authenticity and murky chain of custody as uncontested formalities. They are anything but.

To be sure, those issues *might* have been uncontested if Plaintiffs made responsible use of the undeserved, extraordinary opportunity the Court gave them to obtain knowledgeable testimony from the anonymous IRI experts or the unnamed, likely overseas clerk(s) who compiled the experts' projections into the spreadsheets at issue. Instead, they blew that chance, leaving the provenance of the spreadsheets and the projections they contain shrouded in mystery and mired in fulsome, class-dispositive dispute.

Similarly unavailing is the opposition's contention that jurors would not hear attorney Wand's testimony. That outcome would only obtain if, as it should, this Court excludes the mystery sales projections and Weir's tally of them before Plaintiffs resort to calling their own attorney to the stand. Absent attorney Wand's exclusion, Plaintiffs' neglect of their case has left Bigelow no choice but to move for disqualification of counsel.

**<u>CONCLUSION</u>**

The opposition makes clear that the Court's responsibility is to halt this extraordinary course of prejudice. Bigelow respectfully asks it to grant the motion.

///

///

Dated: March 28, 2025

GORDON REES SCULLY MANSUKHANI

By: */s/ Timothy K. Branson*
Timothy K. Branson
Patrick J. Mulkern
Attorneys for Defendant
R.C. BIGELOW, INC.

**Certificate of Compliance**

The undersigned, counsel of record Defendant R.C. Bigelow, Inc., certifies that this brief contains 4,124 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 28, 2025

*/s/ Timothy K. Branson*
Timothy K. Branson

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101